592 So.2d 1021 (1992)
Martin B. SMITH
v.
STATES GENERAL LIFE INSURANCE COMPANY, et al.
Ex parte Martin B. SMITH.
(In re Martin B. SMITH v. STATES GENERAL LIFE INSURANCE COMPANY, et al.)
1901511, 1901888.
Supreme Court of Alabama.
January 17, 1992.
*1022 Fred W. Killion, Jr. and William M. Watts III of Reams, Philips, Killion, Brooks, Schell, Gaston & Hudson, P.C., Mobile, for appellant.
Thomas M. Galloway, Jr. of Collins, Galloway & Smith, Mobile, for appellees.
Shirley M. Justice and Steven L. Nicholas of Sirote & Permutt, P.C., Mobile, for intervenor American Heart Ass'n, Alabama Affiliate, Inc.
PER CURIAM.
This appeal presents a question of first impression regarding whether a trial court has the authority to allocate a portion of a punitive damages award to an entity other than the plaintiff. It also presents the question whether the trial court erred in setting punitive damages at the full amount assessed by the jury.
In this case, a jury awarded Martin B. Smith $600 in compensatory damages and $250,000 in punitive damages against Freddie White, The Barton Agency, and States General Life Insurance Company. The trial court denied the defendants' motions for a J.N.O.V. or, in the alternative, a new trial, and, relying on Justice Shores's special concurrence in Fuller v. Preferred Risk Life Ins. Co., 577 So.2d 878 (Ala. 1991), allocated one-half ($125,000) of the punitive damages award to the Alabama affiliate of the American Heart Association. In its order denying the defendants' post-trial motions, the trial court reviewed the factors set forth in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and explained its reasons for giving the American Heart Association one-half of the punitive damages award. We consider it appropriate, due to the anomalous nature of this case, to set forth that order in its entirety:
"This case involves a jury verdict of $250,000 as punitive damages on a claim of fraud in and about the sale of a policy of medical insurance coverage. The award is against Freddie White, the agent who sold the policy; The Barton Agency, his principal; and States General Life Insurance Company, the insurer who issued the policy. There was also an award of $600 as compensatory damages, the amount of the premiums paid by Plaintiff in purchasing the insurance *1023 policy in question. Plaintiff asserted that Defendants defrauded him by representing, at the time he applied for the policy, that any condition excluded from coverage under the policy would be reconsidered one year after the policy was in effect and that if his physical condition was then as good or better than at the time of the application, States General would then delete such exclusion. When Plaintiff received his policy it contained an exclusion from coverage of any medical expenses incurred as a result of `chest pain, or any disease or disorder of the heart, including the coronary arteries and coronary veins.' In addition, the policy received contained a `Reconsideration Privilege' found in all such States General policies providing that the insurer would, one year from the issuance date, consider deleting the exclusion. Plaintiff contends, and there was substantial evidence from which the jury could find, that States General did not intend to perform as promised (that is, did not intend to give good faith consideration to the removal of the exclusion) and intended to deceive Plaintiff so as to induce him to purchase the policy.
"Defendants have filed motions seeking judgment notwithstanding the verdict, a new trial, or a remittitur. The Court has considered all of the grounds assigned in support of the motions and will discuss the claimed excessiveness of the punitive award.
"The Court conducted post-trial proceedings concerning punitive damages pursuant to § 6-11-23, [Ala.Code 1975,] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and makes the following findings mandated by that statute and those cases:
"(1) Economic Impact on Defendants. It is conceded that States General will be responsible for payment of the award and it is not asserted that such payment will substantially impair its operations. The Court finds that the punitive verdict of $250,000 will `sting,'[1] but will not seriously affect, States General.
"(2) Economic Impact on Plaintiff. The punitive award is a windfall to Plaintiff, he having been compensated for payment of the premiums by the compensatory award.
"(3) Relationship to Compensatory Award. The two are not reasonably related.
"(4) Same or Similar Acts in the Past. The jury would have been justified in finding, and apparently found, that States General pursued a general and deliberate course of conduct with respect to reconsideration of such exclusions.
"(5) Effort of Defendants to Remedy Wrong. None. States General acknowledges no wrong.
"(6) Opportunities Given to Remedy Wrong. Ample.
"(7) Degree of Reprehensibility of Conduct. Considerable.
"(8) Profitability to Defendant. Unknown, but the jury could have concluded that the conduct was undertaken in order to induce prospective insureds to purchase policies.
"(9) Cost of Litigation. Both sides have gone to considerable expense in this litigation.
"(10) Criminal Sanctions. Not applicable.
"(11) Other Civil Actions. Not applicable.
"The punitive award is more that this Court would have awarded. However, the Supreme Court of Alabama has now declared unconstitutional § 6-11-23(a), which would have abolished the presumption of correctness given to the amount of punitive damages awarded by the jury. Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d 414 (Ala.1991). Therefore, the punitive damages award must be presumed correct and may not be disturbed by this court unless flawed because of the inclusion of unrecoverable *1024 damages, or because it results from `bias, passion, prejudice, corruption, or other improper motive,' or because the award is such as to deprive Defendants of their property without due process of law. Fuller v. Preferred Risk Life Ins. Co., 577 So.2d 878 (Ala.1991); Hammond v. City of Gadsden, supra. Punitive damages were recoverable under the evidence in this case and the award is not flawed in that regard. Considering the above cited factors, the court cannot, and does not, find that the punitive award was the result of improper motive on the part of the jury; nor that it is excessive under the Hammond, Green Oil, and § 6-11-23 factors, nor that Defendants' due process rights have been violated. Rather, the court finds that the award is appropriate to punish States General and to deter others from such conduct.
"Justice Shores, concurring in Fuller v. Preferred Risk Life Ins. Co., supra, recently had this to say concerning punitive awards:
"`I believe that much of the criticism surrounding the issue of punitive damages is due to the perception on the part of the public that punitive damages awards sometimes amount to an undeserved windfall to the prevailing plaintiff. I believe it is true that sometimes an award does constitute an undeserved windfall to the plaintiff, but this fact has no bearing on the question of whether the award exceeds an amount appropriate to punish the defendant for the wrong committed and to deter others from similar conduct in the future. These are the factors the trial court is required to consider on the defendant's claim that the verdict is large. If the court concludes that the amount is not so excessive as to deprive the defendant of his property in contravention of § 13, Ala. Constitution 1901, it nevertheless may also determine that it would be in the best interest of justice to require the plaintiff to accept less than all of the amount and to require the defendant to devote a part of the amount to such purposes as the court may determine would best serve the goals for which punitive damages are allowed in the first place: vindication of the public and deterrence to the defendant and to others who might commit similar wrongs in the future. In such cases, the court has the discretion to order the defendant to devote a portion or all of the amount to efforts to eliminate the conditions that caused the plaintiff's injury.'
"577 So.2d at 886. She concludes that the circuit courts `have inherent authority to allocate punitive damages' and that: `To do so in proper cases could serve the purpose for which punitive damages were authorized to a greater degree than would allowing the plaintiff to receive the entire amount.' [577 So.2d at 887.] This court agrees.
"Plaintiff has expended considerable effort in exposing and prosecuting Defendants' conduct. While the law does not allow compensation to Plaintiff for this effort public policy demands that such efforts be encouraged. Therefore, it would be inappropriate to deprive Plaintiff of a substantial recovery in this case.
"The court finds that the interests of justice require that the award be allocated and that Plaintiff receive $125,000, less attorney fees and expenses applicable to his one-half of the award. The remaining $125,000 shall be deposited with the clerk of this court, who shall disburse attorney fees and expenses to the Plaintiff's attorney upon application therefor approved by the court. The remainder shall be disbursed to the American Heart Association, Alabama Affiliate, Inc., 812 Downtowner Boulevard, Mobile, Alabama.
"The court recognizes that the American Heart Association, Alabama Affiliate, is not involved in efforts to eliminate insurance fraud, but there is to the knowledge of the court no special fund dedicated to that purpose. The American Heart Association, Alabama Affiliate, is a non-profit organization, the purpose of which is the support of research *1025 projects and education programs designed to prevent heart disease. The court finds it appropriate in the context of this case that one-half of the award be allocated to the American Heart Association, Alabama Affiliate, for that purpose.
"It is so ordered. Defendants' motions are denied."
We begin by noting that the record shows no evidence that the jury's verdict was prompted by any improper motive, such as bias, passion, prejudice, or corruption, or that the award of punitive damages deprived the defendants of their property without due process of law. Thus, the trial court's judgment is affirmed insofar as it awards the $250,000 in punitive damages assessed by the jury. Our focus, therefore, narrows to whether the allocation of half of that punitive damages award to an entity other than the plaintiff was appropriate. While Justice Shores, in her special concurrence in Fuller v. Preferred Risk Life Ins. Co., supra (Houston and Steagall, JJ., concurring in Justice Shores's separate opinion), advocated allowing the judiciary to make such an allocation, the majority in Fuller stated:
"Once a jury is demanded by either party, the jury has the constitutional authority to determine what amount, if any, of punitive damages is necessary to punish a defendant for wrongful conduct and to deter future conduct of a like nature. The common law assigned this function to the jury. Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729 (1886)."
577 So.2d at 884. The United States Supreme Court stated in Barry v. Edmunds, 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729 (1886), that "nothing is better settled than that, in such cases as the present [trespass], and other actions for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict."
The amount of punitive damages awarded may be remitted or a new trial granted only upon a finding that the verdict is flawed. See Hammond v. City of Gadsden, 493 So.2d at 1376. Here, there was no such finding. The trial court entered a judgment on the jury's verdict and specifically held that it was not flawed; in essence, viewed from the plaintiff's perspective, the trial court's judgment effected a remittitur. Absent a finding that the verdict was constitutionally infirm, the trial court lacked the authority to reduce Smith's punitive damages award. That portion of the trial court's judgment awarding half of the punitive damages to an entity other than the plaintiff is, therefore, reversed.
Because of our disposition of the appeal, we consider the issues raised by the alternative petition for the writ of mandamus to be moot.
1901511AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1901888DISMISSED AS MOOT.
HORNSBY, C.J., and MADDOX, ADAMS and INGRAM, JJ., concur.
ALMON, J., concurs in the result.
SHORES, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
SHORES, Justice (concurring in part and dissenting in part).
I agree with the position taken by Justice Steagall. I would not hold that portions of punitive damages awards not going to the plaintiff may be paid only into the State's general fund, although I agree with Justice Steagall that such an allocation is appropriate in this case. I have recently stated[2] my opinion that courts have the inherent authority to allocate punitive damages awards and that such authority is not limited to an allocation to the general fund. I quote from the paper in which those views appear:

*1026 "Courts may require a defendant to deposit a part of the punitive verdict into a fund to be administered by the court to reduce the harm for which the defendant has been found guilty, so long as the public interest is served. By such a procedure, the dual purposes of punitive damages are served: punishment of the defendant and deterrence of him and others who might act similarly.[3]
"Broad power to shape and effectuate remedies is deeply rooted in the common law system. Professors Eisenberg and Yeazell point out that for centuries courts have prescribed remedies requiring continuing supervision of various enterprises.[4] There is nothing new in the notion that courts have such authority. Recent examples can be found in the federal courts' supervision of mental institutions, prisons, and school systems. The courts' authority to shape remedies in the area of public law litigation is no longer seriously questioned.[5] Why should its authority be any less in private litigation in which the plaintiff seeks compensatory damages for his own injuries and punitive damages to redress society at large?
"The plaintiff has no basis for complaint if the trial judge orders the defendant to pay part or all of a punitive damage award to either the state treasury or some other fund, because the plaintiff has no constitutional right to punitive damages.[6] The defendant has no basis for complaint, because his right to trial by jury is not diminished by a post-trial directive from the court to pay a part of the jury verdict to one other than the plaintiff. The defendant is not entitled to a return of any amount of the verdict once a jury has determined the issue of liability and has fixed the amount appropriate to punish the defendant for his actions and to deter him and others from similar conduct in the future. Due process rights are thus not implicated by a directive from the trial court to the defendant to deposit a portion of the amount with the clerk of the court for such disposition as the court may order, consistent with the administration of justice.[7]
"Likewise, the plaintiff has no basis to complain if the trial court orders the defendant to deposit a part of the punitive award with the clerk of the court for the establishment of a fund to correct the condition which caused the injury to the plaintiff.
"The plaintiff's attorney should be awarded a fee from the punitive damage award based upon the full amount of the jury's verdict, because it is by his efforts that the general public has been benefited by the jury's action. Some jurisdictions allow an award of punitive damages specifically for the purpose of reimbursing the plaintiff's fees and costs.[8]
"Under this proposal, the following procedure would be followed when a jury returns a punitive damages verdict. The defendant is authorized to move for a new trial, or remittitur on a contention that the verdict is excessive. If the defendant so moves, the trial court would conduct an inquiry[9] to determine whether the verdict was the result, not of the *1027 evidence in the case, but of passion, bias, corruption, or other improper motive. If the court finds that the verdict is flawed, because it is not based upon the evidence, it will set aside the verdict and grant the motion for new trial.
"If, after hearing the evidence, the court determines that the verdict is not the result of passion, bias or corruption but is based upon the evidence, it will then consider whether the amount of the verdict is excessive. To make this determination the court must focus on the defendant to determine whether the punishment is excessive insofar as the particular defendant's conduct is concerned. It should bear in mind that the public policy upon which punitive damages are based is to completely eradicate intentional conduct, by the particular defendant before the court, and to deter others from similar conduct. The public policy is not merely to discourage such conduct, but to make it economically unattractive to others faced with a choice to act as the defendant did. Complete deterrence is the goal of punitive awards.[10] A proper punitive award is one which deprives the defendant of all of the profit from the transaction. It should financially wound but fall short of destroying the defendant. To determine the appropriate amount to serve this purpose the trial court should consider, among any others it may deem appropriate, the following factors: (a) whether the amount awarded bears a reasonable relationship to the harm that has occurred or is likely to occur from the defendant's conduct; (b) the degree of reprehensibility and duration of the defendant's conduct and the defendant's knowledge, if any, that his conduct was causing harm to the plaintiff or others; (c) if the harmful conduct was profitable to the defendant, the punitive damage award should remove all of the profit and result in a net loss to the defendant; (d) the defendant's financial condition; (e) the award should include all costs of litigation so that plaintiffs are encouraged to bring wrongdoers to trial; (f) if criminal or administrative sanctions have been imposed against the defendant for the conduct, this should be taken into account on the issue of excessiveness; (g) if other civil actions are pending or are likely to be brought against the defendant by others harmed by his conduct, this should be taken into account on the issue of excessiveness.[11]
"If, after considering all of these factors and any others which the trial court deems relevant to the issue, the court concludes that the verdict is excessive, considering all of the factors as they relate to the particular defendant before it, the court may order a new trial, conditioned upon the plaintiff's refusal of a remittitur in an amount determined by the court to be just.
"If, on the other hand, the trial court concludes that the award is not excessive from an examination of the facts specific to the defendant, that is, the award is not so large as to destroy the defendant, but is large enough to serve the public policy of punishment and deterrence, the court must then consider whether the public policy is best served by awarding the entire amount to the plaintiff, or alternatively allocating some part of the verdict either to the general fund, or some special fund which will advance the cause of justice. The public policy considerations upon which punitive damages are based are served once the defendant has been required to forgo all of the profits of the transaction. Who receives the funds is a matter of indifference to the public policy considerations which underlie punitive awards.
"The trial court's discretion in determining which alternative will best serve the public policy considerations is very broad. It should consider whether greater deterrence will result by requiring the defendant to pay a portion of the verdict to a special fund to address the conduct which caused the plaintiff's injury. For *1028 example, suppose the defendant has been found guilty by the jury of wantonly or intentionally destroying the plaintiffs' water supply and assessed punitive damages of $10 million, in addition to compensatory damages. The trial court may, in its discretion, order the defendant to pay the plaintiffs the full amount of the compensatory award and to pay the $10 million to the clerk of the court for the establishment of a fund to be devoted to cleaning up the plaintiffs' (or the public's) water supply.
"In a case factually similar to that example [just stated], a Federal District Judge in Kansas (after a bench trial) found in favor of farmers and lessees of land who sought damages and equitable relief arising from the defendant's pollution of a freshwater aquifer beneath the plaintiffs' croplands and awarded punitive damages of $10 million. Instead of permitting the plaintiffs to receive the $10 million punitive award, the trial court held final judgment on the punitive award in abeyance by refusing to rule on the defendant's motion for new trial or remittitur `contingent on the feasibility of restoring the aquifer to an unpolluted condition and [defendant] American Salt's good faith efforts to accomplish such a restoration.' After two years the defendant had not submitted a plan to clean up the aquifer, so the trial court denied the motion for remittitur and awarded the plaintiffs the full amount of the punitive award.[12]
"The procedure proposed in this paper would permit the trial judge to require the defendant to pay the $10 million punitive award either to the state general fund, or an agency of the state, county, or municipality whose function it is to monitor water supplies to assure that clean water sources remain available.
"Alternatively, the court may, in its discretion, require the defendant to pay the money to the clerk of the court for the establishment of a fund to be used to clean up polluted water supplies within the court's jurisdiction. The court also may, in its discretion, appoint an expert to administer a clean up plan and compensate him from the fund established with the punitive award. If the trial court refuses to require a remittitur or allocates a part of the punitive damage award to an entity other than the plaintiff, the plaintiff nevertheless must be allowed all costs of the litigation, including attorney fees, based upon the full amount of the jury's verdict. If the plaintiff and his attorney have entered into a contingent fee contract, the court should honor that contract and the attorney should be compensated based upon the full amount of the jury verdict whether or not any part of it is allocated to an entity other than the plaintiff. This is necessary to assure that the public policy considerations which produced the punitive damage doctrine are preserved. In this way, plaintiffs will be encouraged to bring wrongdoers to justice, which serves the public interest to which the civil justice system is committed.
"While no court has, as yet, allocated punitive damage awards to entities other than the prevailing plaintiff, such eminent jurists and scholars as Chief Justice Rehnquist and Dean Robert McKay have expressed the opinion that justice would be served by the practice. This paper urges courts to do so in proper cases."
STEAGALL, Justice (concurring in part and dissenting in part).
I concur in the opinion insofar as it affirms the award of $250,000 in punitive damages. I dissent, however, as to that portion of the opinion stating that a court cannot allocate a portion of a punitive damages award to an entity other than the plaintiff.
I joined in Justice Shores's special concurrence in Fuller v. Preferred Risk Life Ins. Co., 577 So.2d 878 (Ala.1991), because *1029 I agree that the trial court has the authority to allocate a portion of a punitive damages award to an entity other than the plaintiff. In this case, however, I think that public policy considerations would be best served by allocating to the State's general fund any portion of the punitive damages award not allocated to the plaintiff.
HOUSTON, J., concurs.
NOTES
[1] See Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125, 127-28 (Ala.1981) (Jones, J., concurring).
[2] Justice Janie L. Shores, "A Suggestion for Limited Tort Reform: Allocation of Punitive Damage Awards to Eliminate Windfalls" (1992) (unpublished LL.M. thesis, University of Virginia School of Law).
[3] "Many law and economics scholars believe that efficient solutions to legal problems are generated by the courts, not by the legislature. See, e.g., R. Posner, Economic Analysis of Law, 404 (1977) (`Although the correlation is far from perfect, judge-made rules tend to be efficiency promoting while those made by legislatures tend to be efficiency reducing')."
[4] "Eisenberg & Yeazell, The Ordinary and the Extraordinary in Institutional Litigation, 93 Harv.L.Rev. 465 (1980)."
[5] "Chayes, The Role of the Judge in Public Law Litigation, 89 Harv.L.Rev. 1281 (1976)."
[6] "E.g. Allstate Ins. Co. v. A.M. Pugh Assoc., Inc., 604 F.Supp. 85 (M.D.Pa.1984); Hanover Ins. Co. v. Hayward, 464 A.2d 156 (Me.1983)."
[7] "Board of Regents v. Roth, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] (1972)."
[8] "Erhardt v. Leonard, 104 Idaho 197, 657 P.2d 494 (1983)."
[9] "Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); approved as constitutional, Pacific Mutual Life Insurance Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032 [113 L.Ed.2d 1] (1991)."
[10] "Haddock, McChesney & Spiegel, An Ordinary Economic Rationale for Extraordinary Legal Sanction, 78 Calif.L.Rev. 1, (1990)."
[11] "Green Oil Co. v. Hornsby, id."
[12] "Miller v. Cudahy Co., 592 F.Supp. 976 (D.C.Kan.1985). The U.S. Court of Appeals for the 10th Circuit upheld the punitive award in Miller v. Cudahy Co., 858 F.2d 1449 (10th Cir. 1988), cert. denied, Cudahy Co. v. Miller, [492] U.S. [926], 109 S.Ct. 3265 [106 L.Ed.2d 610] (1989)."