The trial of this case resulted in a jury verdict in favor of Wayne and Carolyn Jaye, purchasers of a mobile home, against the manufacturer, Vintage Enterprises, Inc., and a verdict in favor of the retailer, Harold E. Cantrell, against the Jayes. Judgments were entered accordingly. Vintage appeals from the denial of its post-judgment motions for judgment notwithstanding the verdict and, alternatively, for a new trial; and the Jayes appeal from the denial of their post-judgment motion for a new trial against Cantrell. We affirm the judgments as to both appeals.
Following a hearing on the post-judgment motions, the trial court entered the following "Hammond order"[1]:
"This case concerns the order, sale, manufacture, and delivery of a mobile home. The plaintiffs, Mr. and Mrs. Jaye, were in the market for a mobile home. During the course of shopping for a home, they saw a Vintage Enterprises (hereinafter "Vintage") *Page 1170 
home that they liked. However, they did not want that particular home. Eventually, they talked with defendant, Harold Cantrell (hereinafter "Cantrell") about the purchase of a home. Mr. Cantrell did not represent Vintage and had never sold a Vintage home. Cantrell told the Jayes that he could help them order a Vintage home, and he contacted Vintage for them. Mrs. Jaye dealt directly over the telephone with a Vintage representative and ordered a particular model home. In addition, she went over an options sheet with the Vintage representative and requested a number of options. Therefore, in a sense the home was a custom home. The Jayes' home was manufactured and inspected at the Vintage plant in Georgia. During the course of inspection, a number of defects were discovered. Some of these defects were corrected in the factory. However, others were not. In spite of the fact that some defects were not corrected, the home was approved for shipment and was transported to Cantrell's lot in Alabama. From there it was taken to the Jayes' property in Tallapoosa County, where it was set up. Immediately, Mrs. Jaye registered a number of complaints with the home. Some of these complaints concerned set up problems, and some were manufacture problems. A good deal of testimony was taken to establish which problems were attributable to set up and which were attributable to manufacture. Both Cantrell and Vintage set out to cure the various problems raised by Mrs. Jaye. In some cases, defects were remedied. Other defects remain. Mrs. Jaye was not satisfied with the attempted repairs and stayed in contact with Vintage. At some point, she even contacted the Better Business Bureau in Georgia, and, as a result, there was some correspondence between Vintage and the Better Business Bureau. The Jayes ultimately filed suit against Vintage and Cantrell.
"The case went to the jury on the following causes of action:
"Breach of Express Warranty as to Vintage only.
"Breach of Contract as to Cantrell only.
"Negligent or Wanton Conduct as to all defendants.
 "Fraud in a number of aspects as to all defendants.
"Breach of Implied Warranties as to Cantrell only.
"Violation of Magnuson-Moss[2] as to all defendants.
"The jury returned a verdict for Cantrell and against the Jayes. The jury also returned a verdict against Vintage and in favor of the Jayes. The verdict submitted for use by the jury was a general verdict with a special interrogatory concerning the application of Magnuson-Moss. The jury responded that it found a violation of Magnuson-Moss. The jury, in returning its verdict for the Jayes, modified the form verdict by setting compensatory damages at $20,000, and punitive damages at $500,000.
"Vintage has now filed a Motion for New Trial and For Judgment Notwithstanding the Verdict. The Jayes have filed a Motion for New Trial as to Cantrell.
"After considering the argument of counsel and all of the testimony, the court is satisfied that there was sufficient evidence to submit the case to the jury on all of the above enumerated counts. The court is also satisfied that sufficient evidence existed to submit the question of punitive damages [to the jury].
"The pivotal question is the excessiveness vel non of damages. Vintage maintains that the compensatory damages in this are excessive. However, for obvious reasons, counsel for Vintage concentrated his argument on the punitive damages award.
"As set forth in Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), a jury verdict may be flawed in regard to damages in two ways. First, a damages award *Page 1171 
 " 'may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure.'
"493 So.2d at 1378.
"Second, a verdict is flawed where it results
 " 'not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive.'
"493 So.2d at 1378.
"The damages in this case were far from calculation with mathematical certainty. Every item of damage was contested, and ample evidence was presented by all parties such that the jury had a wide range in determining compensatory damages. For instance, one defect claimed was insufficient ceiling cover. Vintage's expert testified that additional cover could be sprayed on at a rather nominal cost. The Jayes' expert testified that the whole ceiling needed to be removed in order to adequately repair the ceiling. Vintage argued that the submission of [the issue of] punitive damages was unsupported by the evidence.
"Insofar as the verdict being the result of bias, passion, prejudice, corruption or other improper motive, counsel read from affidavits and exit interviews with jurors over the objection of counsel for the Jayes. At trial, several former employees of Vintage were scheduled to appear and testify. However, they did not appear and were not subject to subpoena. The main import of the exit interviews was that the witnesses' failure to appear showed a lack of concern on the part of Vintage.
"In viewing the evidence at this juncture, it is important to note that the jury conducted a view of the premises. The court was present during the view and is satisfied that the jury conducted a complete inspection. Based on the standard of review at this point, the court is satisfied that the jury could have found that:
 "(1) Vintage made improper charges for various items.
 "(2) Defects in the home were known to Vintage after manufacture and prior to transport.
 "(3) Vintage transported the home with knowledge of its defective condition.
 "(4) Vintage was given an opportunity to repair, but deliberately did not make a good faith effort to completely repair.
 "(5) As an indication of the corporate state of mind regarding this home, Vintage made misrepresentations to the Georgia Better Business Bureau.
"Counsel for Vintage argued that any defects were cosmetic and did not adversely affect the function of the home. The jury heard the testimony and saw the home. Regardless of any other person's impressions, the jury had ample testimony and observation to make up its collective mind. Consequently, the court is satisfied that the jury's finding of liability was supported by the evidence both as to Vintage and Cantrell.
"Hammond mentions three specific areas of inquiry. The first area is culpability. As outlined above, the court is satisfied that the jury had sufficient evidence from which to determine egregious conduct on the part of Vintage. The second area of inquiry concerns the desire of discouraging others from similar conduct. This verdict may be seen as a very strong statement by the jury that Vintage and other mobile home manufacturers should give a customer what he pays for and that a defective product should not be placed in the stream of commerce. The third area of inquiry is the impact on the parties. This is a more elusive area, especially since the jury never has any idea of the financial worth of any party. Vintage argues that $500,000 is simply a windfall for the Jayes. One of the primary criticisms of punitive damages is that the imposition of punitive damages almost always results in a windfall for the prevailing party. However, under the law of damages applicable to this case, the size of the award to plaintiffs is not a determining factor. The most significant impact to be considered is the financial impact on the defendant. Since juries have no idea of the financial worth of a defendant, one might *Page 1172 
logically argue that any award of punitive damages is a shot in the dark. A damages award of $10,000 might serve as more punishment of one defendant than a damages award of $1,000,000 against another defendant. Vintage introduced, over the objection of counsel, the 1988 Annual Report of Vintage. Vintage argued that imposition of a $500,000 damages award would fiscally cripple Vintage. The court has reviewed the Annual Report in light of the fact that plaintiffs' counsel did not have the opportunity to cross-examine anyone regarding the figures presented. This report paints a somewhat bleak picture. Even so, there is a statement in the report that a reserve has been established to satisfy this judgment. Vintage argues that this section actually means that a reserve has been established which will satisfy judgment after a substantial remittitur.
"As stated in Hammond, a trial judge may not substitute his judgment for that of the jury. After considering all relevant factors, the court cannot say that the verdict against Vintage was flawed.
"It is, therefore, ORDERED, ADJUDGED, and DECREED that:
 "(1) The Motion for New Trial or Judgment Notwithstanding the Verdict filed by Vintage Enterprises, Inc., is hereby denied.
 "(2) The Motion for New Trial filed by plaintiffs in regard to defendant Cantrell is hereby denied.
 "(3) All questions regarding fees and expenses under the Magnuson-Moss claim are reserved."
After a careful study of the entire record of trial, the judgments entered following the hearing on the post-judgment motions, the allegations of error, and the excellent briefs of the parties, we find no basis for reversal; therefore, the judgment in favor of the Jayes against Vintage and the judgment in favor of Cantrell against the Jayes are affirmed. On the issue of damages, see this Court's opinion in IndustrialChemical Fiberglass Corp. v. Chandler, 547 So.2d 812 (Ala. 1989) (on rehearing).
AFFIRMED AS TO 87-1390.
AFFIRMED AS TO 87-1417.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., recuses.
[1] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
[2] The Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301-2312.