586 So.2d 854 (1991)
SOUTHERN LIFE AND HEALTH INSURANCE COMPANY and Richard Perry
v.
Lucy R. TURNER.
88-1289.
Supreme Court of Alabama.
August 23, 1991.
*855 Ollie L. Blan, Jr. and J. Mark Hart of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, and Theodore B. Olson, Larry L. Sims and Theodore J. Boutrous, Jr. of Gibson, Dunn & Crutcher, Washington, D.C., for appellants.
Delores R. Boyd of Mandell & Boyd, Montgomery, and Jock M. Smith, Tuskegee, for appellee.

ON REMAND FROM THE UNITED STATES SUPREME COURT
HORNSBY, Chief Justice.
This case has been remanded to this Court by the mandate of the United States Supreme Court, ___ U.S. ___, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991), vacating this Court's judgment. This Court's earlier opinion is published at 571 So.2d 1015 (Ala. 1990). The Supreme Court remanded the case to us for further consideration in light of its decision in Pacific Mutual Life Insurance *856 Co. v. Haslip, 499 U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).
In Haslip, the Supreme Court held that punitive damages assessed against Pacific Mutual under Alabama procedures did not violate the constitutional guarantee of due process because (1) the trial court had instructed the jury on the nature and purpose of punitive damages and when such damages could be imposed, (2) the post-trial procedures set out in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), ensured adequate review of the jury award by the trial court in light of the purpose and nature of punitive damages, and (3) this Court evaluates awards of punitive damages on appeal in light of detailed substantive standards designed to ensure that the award does "not exceed an amount that will accomplish society's goals of punishment and deterrence." Green Oil Co. v. Hornsby, 539 So.2d 218, 222 (Ala.1989).
The facts in this case are presented in our earlier opinion and need not be repeated here. However, in light of Haslip, we must reconsider our affirmance of the trial court's $500,000 judgment against Perry and Southern Life and Health. The trial court entered this judgment after extensive post-trial briefing and argument pursuant to our guidelines in Hammond, supra, and the trial court's final determination resulted in a remittitur of $4,500,000 of the original $5,000,000 jury verdict. Thus, the issue is whether, given the factors set out in Haslip, our affirmance of the $500,000 judgment was proper. We hold that it was.

I. The Sufficiency of the Jury Charge
Under the criteria set out in Haslip, we first consider whether the oral charge by the trial court sufficiently constrained the jury's determination with respect to the nature and purpose of punitive damages. The trial court's charge on punitive damages was as follows:
"What about punitive damages? Punitive damages are damages in addition to and above and beyond compensatory damages, which seek to punish a wrongdoer. Sometimes we refer to it as exemplary damages. That is, damages to make an example of the wrongdoer. For the purpose of punishing that wrongdoer for the wrong that he has perpetrated. And secondly, to make an example out of him, and to prevent him or other people similarly situated from doing the same sort of wrong in the future. The amount of punitive damages in any case is left to the sound discretion of the jury. If you are to award punitive damages, you determine the amount that is appropriate in this case. In determining the amount though, you can be guided by three things. The enormity of the wrong, the culpability of the wrongdoer, and the necessity for preventing similar wrongs by this defendant or other people similarly situated in the future. So again, punitive damages are for the purpose of punishment, and making an example of the wrongdoer, so that he or others in the future will not do the same type of misconduct. And in determining the amount, use your sound discretion, keeping in mind three things. The enormity of the wrong, the culpability of the wrongdoer, and the necessity for preventing similar wrongs by that wrongdoer or others similarly situated in the future.
"In a case where fraud is alleged, as in this case, punitive damages can be awarded only when the plaintiff has proved, not only the existence of the legal fraud in question, but another step must be proved. Another item must be proved. Not just that the legal fraud occurred. But, to justify punitive damages, the plaintiff must reasonably satisfy you from the evidence which is clear and convincing, that the fraud in question was malicious, oppressive or gross, and committed with the intent to injure the plaintiff. So, before you could award punitive damages, as opposed to compensatory damages, before you could award punitive damages in this case, you would have to be reasonably satisfied from the evidence, and the evidence would have to be clear and convincing on this point, that Richard Perry committed the legal fraud that he is accused of, as I defined that to you. And, you must be reasonably *857 satisfied, and the evidence must be clear and convincing on this, that that fraud was malicious, oppressive or gross, and that it was done with the intent, committed with the intent to injure, financially injure, Lucy Turner. Without such proof, you might be authorized to award compensatory damages in the amount of a thousand dollars, but you would not be authorized to award any punitive damages."
This instruction makes clear that the purpose of punitive damages is punishment of the wrongdoer and deterrence of similar wrongful conduct. Even though the instruction vests considerable discretion in the jury for determining punitive damages, the instruction also limits that determination by giving three factors for consideration: (1) the enormity of the wrong, (2) the culpability of the wrongdoer, and (3) the necessity of preventing similar wrongs. In Haslip, a similar instruction was held to have "reasonably accommodated Pacific Mutual's interest in rational decisionmaking and Alabama's interest in meaningful individualized assessment of appropriate deterrence and retribution." 499 U.S. at ___, 111 S.Ct. at 1044.
The instruction also explicitly requires that the jury, in order to award punitive damages in a fraud case, find that malice has been proven by clear and convincing evidence. This approach was noted with approval in Haslip, 499 U.S. ___, at n. 11, 111 S.Ct. at 1046 n. 11. Accordingly, we hold that this punitive damages instruction meets the first requirement of the test in Haslip.

II. The Hammond Hearing
The second consideration by the Court in Haslip concerned an evaluation of the post-trial procedures established in our case of Hammond v. City of Gadsden, supra. The record indicates that the post-trial Hammond-type hearing in this case was preceded by extensive briefing by the parties. There is no doubt that the trial court considered the factors enumerated in Green Oil Co., supra, at 223-24: (1) the relationship between the punitive damages and the harm that could result from the defendant's conduct and the actual harm that resulted, (2) the degree of reprehensibility of the defendant's conduct, (3) the profit to the defendant by the wrongful conduct, (4) the financial position of the defendant, (5) the costs of litigation, (6) the imposition of criminal sanctions, and (7) the existence of other civil actions under similar circumstances. The record further indicates that the parties had the opportunity to present evidence with respect to these factors for the trial court's additional consideration, but there is no indication that any significant additional evidence was presented.
The record is plain that the trial court considered these factors in its review of the jury award from its own unique position of observer of all of the formal aspects of the case. Based on its view of the proceedings, the parties, and the jury, and in light of the factors set out in Hammond and Green Oil Co., the trial court determined that the jury verdict of $5,000,000 was excessive and required a remittitur to one-tenth of that amount. In its Hammond order, the trial court followed this basic guideline:
"Punitive damages should not exceed an amount necessary to accomplish society's goals of punishment and deterrence, but the degree of punishment necessary to achieve those goals changes with each case."
Central Alabama Elec. Co-Op. v. Tapley, 546 So.2d 371, 377 (Ala.1989). Accordingly, we conclude that the Hammond hearing in the instant case satisfied the requirement in Haslip that the trial court conduct a meaningful and adequate review of the jury's award.

III. Appellate Review
The final requirement to provide constitutional due process in the assessment of punitive damages under Haslip lies with this Court in its review of the trial court's judgment. Of course, this Court reviews each award of punitive damages under the standards articulated in Green Oil Co. and Central Alabama Elec. Co-Op., but this Court also reviews such *858 awards to "assure some degree of uniformity in the area of punitive damages." Burlington Northern R.R. v. Whitt, 575 So.2d 1011, 1024 (Ala.1990). We note that the judgment in this case is not disproportionate when considered alongside other punitive damages verdicts in fraud cases. See, e.g., Massachusetts Mut. Life Ins. Co. v. Collins, 575 So.2d 1005 (Ala.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1306, 113 L.Ed.2d 240 (1991) ($750,000 punitive damages award in insurance fraud case held not excessive); HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990) ($1,800,000 punitive damages award upheld in fraud action); Vintage Enterprises, Inc. v. Jaye, 547 So.2d 1169 (Ala. 1989) ($500,000 punitive damages award in fraud action upheld); and State Farm Mut. Auto. Ins. Co. v. Robbins, 541 So.2d 477 (Ala.1989) (remittitur of all but $500,000 of $5,000,000 verdict affirmed in fraud action).
Our review of the record and of the trial court's conclusions in its Hammond order reveals no significant point on which this Court would be warranted in reversing the judgment of the trial court. As the trial court noted in its Hammond order, this was a reprehensible fraud, mitigated only in part by agent Perry's attempt to pay back part of his theft. Southern Life and Health's liability under Alabama's law of respondeat superior was thoroughly discussed in our earlier opinion on this case. 571 So.2d at 1018-19. The State of Alabama has a strong interest in encouraging insurance companies and their agents not to misappropriate their policyholders' premiums. The record contains no evidence as to the defendants' financial position, other civil or criminal actions, or lack of profitability that would support setting aside the trial court's determination. In short, the amount of this judgment bears a reasonable relation to the reprehensibility of the conduct and the importance of encouraging other insurers to avoid similar conduct.
We note that Southern Life and Health Perry argue strongly that the judgment in this case is excessive because Turner's compensatory damages were only $1,000, while the total amount of the judgment was $500,000, meaning that the punitive damages were 499 times Turner's compensatory damages. Essentially, Southern Life and Health and Perry argue that there is an acceptable mathematical ratio between compensatory damages and the proper amount of punitive damages, and that in this case that ratio has been exceeded. We reject that argument, as we have rejected it in the past.
"[W]e have repeatedly held that punitive damages need not necessarily bear any particular relationship to compensatory damages. U-Haul Co. of Alabama v. Long, 382 So.2d 545 (Ala.1980). We have said that decisions on punitive damages must be made on a case by case basis, and it is clear from our cases that this court is willing to uphold substantial jury awards for damages, even in excess of $1,000,000.00, when the facts warrant such an award."
Nationwide Mut. Ins. Co. v. Clay, 525 So.2d 1339, 1344 (Ala.1987).
The only means to ensure that punitive damages awards fall within the bounds of due process imposed by the Alabama and United States Constitutions is to evaluate the facts and merits of each case according to the factors set out in Green Oil Co. and Central Alabama Elec. Co-Op. A constitutionally permissible punitive damages award against a wealthy defendant, who engages in egregious conduct that fortuitously does little real harm but has the potential to do great harm, might involve a greater ratio of punitive damages to compensatory damages than that in this case. In contrast, a constitutionally permissible punitive damages award against a poor defendant, whose reckless conduct causes great actual harm but has little potential to cause other harm, might require a lower ratio of punitive to compensatory damages than that in this case. We find no compelling reason to set an arbitrary mathematical relationship between compensatory and punitive damages. Imposing such a relationship would inevitably result in injustice, and we decline to impose it.
*859 Accordingly, we conclude that the trial court's remittitur of the jury verdict properly followed our guidelines in Hammond, Green Oil Co., and Central Alabama Elec. Co-Op. and resulted in an award of punitive damages that was rationally related to punishing the wrongdoers and to deterring similar conduct in the future. It follows that the trial court's judgment complies with the due process requirements articulated in Haslip. That judgment is therefore due to be affirmed upon our reconsideration on remand.
AFFIRMED.
ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, J., concurs in the result.
HOUSTON, Justice (concurring specially).
I concur with Chief Justice Hornsby's opinion; however, I write specially because I do not believe that Ms. Turner should be entitled to receive the full award of punitive damages in this case.
The jury awarded Ms. Turner only $1,000 as compensatory damages. This is clear from a thorough review of the record in this case, including the trial court's oral charge to the jury. Is Ms. Turner entitled to receive the entire $499,000 in punitive damages awarded to her by the judgment?
Justice Shores, in her special concurrence in Fuller v. Preferred Risk Life Insurance Co., 577 So.2d 878, 886 (Ala.1991), and I in my special concurrence in Principal Financial Group v. Thomas, 585 So.2d 816 (Ala.1991) (which relied on Justice Shores's special concurrence in Fuller), concluded that a punitive damages award does sometimes constitute an undeserved windfall to a plaintiff, but that this has no bearing on the question of whether the award exceeds an amount appropriate to punish the defendant for the wrong committed, or to deter others from similar conduct in the future. Justice Shores in Fuller, and I in Thomas, suggested that the Court divert some of the punitive damages award to the public good when a plaintiff would otherwise enjoy an undeserved windfall.
I would reduce the amount that the plaintiff is to receive to an amount closely corresponding to the 200 to 1 ratio of punitive damages to out-of-pocket expenses that existed and was approved by the United States Supreme Court in Pacific Mutual Life Insurance Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).
Under the circumstances of this case, I think that Ms. Turner must receive the entire compensatory damages award of $1,000 and should receive $250,000 of the punitive damages award; and that the balance of $249,000 of the punitive damages award should be paid to the State of Alabama General Fund to be used for the public good. An amount equal to 251/500 of the expenses incurred in litigation and an amount equal to 251/500 of the plaintiff's attorney fees, determined in accordance with the contract between Ms. Turner and her attorney, should be paid to Ms. Turner's attorney out of the $251,000 of punitive and compensatory damages I would allot to Ms. Turner. The balance of the $251,000 should be paid to Ms. Turner. An amount equal to 249/500 of the expenses incurred in the litigation and an amount equal to 249/500 of the plaintiff's attorney fees, determined in accordance with the contract between Ms. Turner and her attorney (a copy of the contract would need to be filed with the trial court) should be deducted from the $249,000 remaining and should be paid to Ms. Turner's attorney; the balance of the $249,000 should be forwarded to the treasurer of the State of Alabama to be deposited in the General Fund of the State to be used for the public good.
MADDOX, Justice (concurring in the result).
In its brief, Southern Life argues that "[b]y remanding this case to this Court for further consideration in light of Pacific Mutual [v. Haslip, ___ U.S. ___, 111 S.Ct. 1032 (1991) ], the Supreme Court has clearly indicated its view that there is a substantial likelihood that the $499,000 punitive *860 damages award inflicted against Southern Life and Mr. Perry violates the new due process standards articulated in that case."
Lucy Turner views the issue differently. In her brief, she states that "Alabama's constitutionally acceptable procedures for scrutinizing punitive verdicts for excessiveness were applied properly in the trial court and on appellate review," and that "[p]ursuant to the United States Supreme Court's mandate, this Court should reaffirm the Judgment."
It is apparent, therefore, based on these opposing arguments, that the parties disagree on the scope of this Court's review in accordance with the Supreme Court's mandate. Frankly, I cannot tell at this point which party has the better argument, but it would appear that this Court was ordered to do more than merely reaffirm the judgment entered before without considering whether the $499,000 punitive damages award was excessive, especially in view of the fact that it was almost 500 times greater than the actual compensatory damages suffered by the plaintiff.
It would appear that the Supreme Court, in Haslip, did more than merely approve the Alabama procedure for review of punitive damages awards, because the Court, in Haslip, reviewed the $840,000 award made in that case to determine independently whether due process requirements were met. The Court stated:
"We are aware that the punitive damages award in this case is more than 4 times the amount of compensatory damages, is more than 200 times the out-of-pocket expenses of respondent Haslip,... and, of course, is much in excess of the fine that could be imposed for insurance fraud under Ala. Code §§ 13A-5-11 and 13A-5-12(a) (1982), and §§ 27-1-12, 27-12-17 and 27-12-23 (1986). Imprisonment, however, could also be required of an individual in the criminal context. While the monetary comparisons are wide and, indeed, may be close to the line, the award here did not lack objective criteria. We conclude, after careful consideration, that in this case it does not cross the line into the area of constitutional impropriety."
___ U.S. at ___, 111 S.Ct. at 1046.
If the mandate of the Supreme Court requires this Court to apply the Haslip guidelines, i.e., to consider the size of the punitive damages award as compared to the amount of actual monetary loss suffered, and the size of the punitive award as compared to a penalty that could be imposed for insurance fraud, then this Court has not fully understood the scope of the mandate. On the other hand, if the Supreme Court was mandating that this Court review once again what this Court had already done, then Ms. Turner is correct and the judgment is due to be affirmed once again.
If the Supreme Court mandated that this Court consider the judgment again in view of what that Court said in Haslip about the necessity of comparing a punitive damages award with the amount of compensatory damages awarded, then there is a serious question of whether the $500,000 judgment can stand, because the punitive damages award by the jury in this case was 4,999 times larger than the monetary loss suffered, and even after remittitur was 499 times greater than the loss suffered. If the $840,000 punitive damages award in Haslip, which was "4 times the amount of compensatory damages," was "close to the line ... of constitutional impropriety," (Haslip, ___ U.S. at ___, 111 S.Ct. at 1046), then the award in this case, which is 499 times the amount of compensatory damages, must "cross the line," because the $499,000 punitive award has no "understandable relationship to compensatory damages." ___ U.S. at ___, 111 S.Ct. at 1045.
This Court, on remand, clearly has not reconsidered the judgment and addressed an issue the Supreme Court of the United States considers to be relevantthe size of the punitive damages award when compared to the actual loss suffered. On the contrary, this Court specifically states that it finds "no compelling reason to set an arbitrary mathematical relationship between compensatory and punitive damages," *861 and that "[s]uch a relationship would inevitably result in injustice, and we decline to impose it." If that holding says what it seems to say, then this Court believes that a comparison of the size of the punitive damages award to the amount of actual loss suffered is not relevant. Of course, the Supreme Court of the United States seems to say that such a comparison is relevant.
Based on these facts, I have reservations about concurring in this Court's affirmance of the judgment, and I would disagree with the result if I could be absolutely sure about what the Supreme Court of the United States meant when it mandated a reconsideration of this case in view of the Haslip case. The Supreme Court of the United States must have been aware that the original verdict in this case was for $5,000,000 and that the trial judge, after conducting a Hammond-type hearing, ordered a remittitur of all but $500,000 of that verdict. The Supreme Court also must have been aware that this Court had conducted a review of that trial court action on the original appeal. At that time, I concurred in the affirmance of the judgment, but specifically stated that I had dissented in the Haslip case, and that my dissent in Haslip would be adopted by the Supreme Court of the United States. It was not, of course; therefore, I must assume that the Supreme Court of the United States is of the opinion that the Hammond-Green Oil reviews are adequate and meaningful.
I stated in the dissent in Pacific Mutual Life Insurance Co. v. Haslip, 553 So.2d 537, 545 (Ala.1989) that "[w]hile I applaud the procedure this Court has adopted to review and revise the jury's decision based on its `standardless discretion,' I cannot believe that procedure is sufficient to accord to litigants all the due process protection the Constitution envisions." The Supreme Court concluded otherwise, and held that those procedures were adequate and meaningful. Post-Haslip reviews by this Court, including this one, indicate that the procedures, when actually applied, are not adequate and meaningful, as I have pointed out in dissents. In Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d 414 (Ala. 1991), this Court overturned a trial court's judgment on review of a punitive damages award and held a state statute unconstitutional, even though the constitutionality of the statute had not been raised. In Principal Financial Group v. Thomas, 585 So.2d 816 (Ala.1991), this Court upheld a $750,000 judgment, which was 750 times higher than the compensatory damages, even though the contractual issue of the liability of the company to pay was not finally determined until the jury resolved the issue in favor of the policyholder after a trial of the case.
I concurred in the judgment on our original review of this case on condition the Supreme Court affirm the Haslip decision of this Court. That Court not only has affirmed that decision, but has remanded this case for reconsideration in light of Haslip.
While I do not read Haslip as saying all that some other members of this Court apparently seem to think it says, I was wrong in my assessment of what the Supreme Court would decide in the Haslip case; therefore, I concur in the result only.