Frank JAMESON and Hazel
Jameson Cole

v.

MUTUAL LIFE INSURANCE COM-
PANY OF NEW YORK.

Civ. No. 5173.

United States District Court
E. D. Texas,
Beaumont Division.

Nov. 18, 1968.

Ernest L. Sample, Beaumont, Tex., for plaintiff.

Larry M. Lesh, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

FISHER, Chief Judge.

This case has been submitted to the Court upon an agreed stipulation of facts and briefs prepared by the parties. Briefly, the plaintiff, Frank Jameson, Jr. and Intervenor, Mrs. Hazel Jameson Cole, seek by this action to recover Double Indemnity Benefits under two policies issued by defendant, The Mutual Life Insurance Company of New York, the Company which provides insurance upon the life of Frank Edward Jameson.

The facts are as follows: Policies 710–50–04 and 704–63–38 were classified as a "Z" series class of policy, authorized for issuance by the Company from January 1, 1948 to September 5, 1951. Form 48–301, the double indemnity rider attached to and made a part of the policies was also authorized for use in connection with class "Z" policies from January 1, 1948 to September 5, 1951. This double indemnity provision had an established reserve based upon the 1926–1933 inter-company table with the 1941 Commissioner's Standard Ordinary Table of Mortality and a 2.25% interest factor. A dividend has been paid on form 48–301 in each year since 1950.

Statistics on the method of suicides indicate that among white men in the United States, firearms are the most frequent means of suicide and account for more than one-half of such suicides. For this reason, Defendant included in Form No. 48–301, being the double indemnity rider attached to policies numbered 710–50–04 and 704–63–38, a provision removing from the coverage of such double indemnity provisions deaths "caused or contributed to by * * * self-destruction * * *" and deaths "caused or contributed to by * * * gunshot or pistol wound, unless inflicted by a person other than the insured."

The Company filed Form 48–301, with the Insurance Department of the State of Louisiana on March 6, 1947, which approved the Form and on April 7, 1947, Form No. 48–301 received the approval of the Insurance Department of the State of New York. Pursuant to applications made by Frank Edward Jameson and delivered to a representative of the Company in Louisiana, the Company issued and delivered to Frank Edward Jameson in Louisiana the policies in question. Because the Company was not authorized to do business in Texas until September 1950, Form No. 48–301 did not receive the approval of the Insurance Commissioner of Texas until October 6, 1950.

From January 1, 1964, through December 31, 1966, the Company authorized accidental death benefit rider Form 64303 for use in connection with the Company's "D" Series class of policy. Form 64303 had a premium, dividend and reserve structure which differed from that used in connection with Form 48–301. The reserves in Form 64303 were established by the 1959 inter-company accidental benefit table with the 1958 Commissioner's Standard Ordinary Table of Mortality and a 2.50% interest factor. No dividends have been paid on Form 64303.

The benefits in Form 64303 were more liberal than those in Form 48–301, in that, the coverage was extended from 65 to age 70, and death by gunshot as an exclusion was eliminated. The rates for Form 64303 were "reduced in recognition of recent favorable experience and because of the omission of the future dividends on the provision until shown to be justified by experience."

Frank Edward Jameson died on November 22, 1964. He was placing a loaded pistol in his pocket and the pistol fired accidentally, striking him in the abdomen and causing his death. The

Company paid the ordinary life benefits of $10,000 in each policy but denied liability for the double indemnity benefits in such policies on the ground that the insured's death was within the gunshot wound exclusion of Form No. 48-301.

 As stated earlier, the main issue is whether the death of Frank Edward Jameson is within the gunshot exclusion of Form No. 48-301; however, other issues must be decided before that issue is reached. The first issue is whether the substantive law of Texas, Louisiana or New York is applicable to this case. Both Plaintiff and Defendant apparently agree that the substantive law of Louisiana should apply since the insurance contract was entered into and delivered in Louisiana. The nature, validity, and construction of an insurance contract should be governed by the law of the place where it was made. Bostron v. Seguros Tepeyac, 225 F.Supp. 222 (N.D.Tex., 1963); Washington Nat'l Insurance Co., v. Shaw, 180 S.W. 2d 1003 (Tex.Civ.App.1944, writ dism.).

██ A second issue in this case is whether Form 48-301, and particularly the gunshot wound exclusion, was lawfully a part of the policies in question. According to the stipulation Form 48-301 was approved for use in connection with the policies in question by the Insurance Department of Louisiana, New York and Texas. The Louisiana Insurance Code provides that every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider made a part of said policy. 22 La.Rev. Stat. Sec. 654. Since the rider Form 48-301 was approved and in use and since the Louisiana statutes provide that construction of the policy must be in accordance with the limitations of the rider, the Court finds that Form 48-301 was lawfully a part of the policies and that the policy must be construed as written including the entirety of Form 48-301.

A third issue is whether the Company in 1964 by the issuance of accidental death benefit rider Form 64303 for use in connection with policies thereafter issued, effected an unlawful discrimination against earlier policyholders and, if so, whether such discrimination required the removal of the gunshot wound exclusion from Form 48-301 so long as 64303 was in regular use. The anti-discrimination statutes of Louisiana, 22 La.Rev. Stat., Sections 652 and 1214, prohibit only *unfair* discrimination between individuals of the same class.

Plaintiff apparently argues that individuals holding policies which contain Form 48-301 are of the same class with holders of policies containing Form 64303 and that there has been unfair discrimination bcause Form 64303 provides liberalized benefits at somewhat reduced rates.

In determining the class of policies to which Form 64303 was to be applicable, consideration was given to the facts that Form 64303 had a premium, dividend and reserve structure different from that used in connection with Form 48-301; and the reserves on Form 64303 were established upon an entirely different basis with an entirely different mortality table and interest factor than Form 48-301. A dividend has been paid on Form 48-301 in each year since 1950. No dividends have ever been paid on Form 64303.

██ The Louisiana anti-discrimination statute provides that " * * * in determining a class, consideration may be given to the nature of the risk, plan of insurance, the actual or expected expense of conducting the business or any other relevant factor." 22 La.Rev.Stat. Sec. 1214(7). The Court feels that the above considerations which the Company took into account when the rate for Form 64303 was reduced were "relevant factors" and that there was no unfair discrimination exercised against earlier policyholders by the issuance of a new accidental death rider Form 64303.

The final and determinative issue of this case is whether the gunshot wound exclusion of Form 48–301, providing that the Company did not assume the risk of death resulting from " * * * gunshot or pistol wound, unless inflicted by a person other than the insured * *" was applicable to and included the death of Frank Edward Jameson from the coverage of Form 48–301.

We do not so construe the exclusion in light of Jefferson Standard Life Insurance Co. v. Myers, 284 S.W. 216 (Tex. Com.App., 1926) and Heiman v. Pan American Life Insurance Co., 183 La. 1045, 165 So. 195 (1935). In the *Jefferson Standard* case, the court concluded that a provision which excluded liability when death was inflicted by someone other than the insured would not apply when the insured's death was caused by an insane person. The court concluded that "inflicted" means an intentionally caused death and since an insane person was presumed to have no intent, then the exclusion would not apply.

In the present case, the exclusionary clause can only be read to have the effect of excluding death inflicted by the insured; that is the only logical reading of the clause. Giving the same meaning to the word "inflicted" as the court did in *Jefferson Standard*, the court concludes that the exclusionary clause in Form 48–301 was meant to apply only to intentionally inflicted wounds and not accidental injuries.

It was stipulated that the gunshot exclusion was included due to the number of suicides by firearms. Thus, the court must conclude that the only reason the gunshot exclusion was included was to avoid liability when the wound was intentionally self-inflicted. Since the wound was accidentally inflicted by the insured, the defendant is liable under the Double Indemnity Provision Form 48–301; to hold otherwise would be grave injustice.

Judgment for the plaintiff and intervenor, with costs assessed against the defendant.