500 So.2d 236 (1986)
William ADAMS and Dorothy Adams, His Wife and Thomas Shelton and Elizabeth Shelton, His Wife, Appellants,
v.
Sylvia Armstrong BRANNAN and Fidelity and Casualty Co. of New York, a New Hampshire Corporation, Appellees.
Nos. 85-1944, 85-1980.
District Court of Appeal of Florida, Third District.
December 9, 1986.
Rehearing Denied January 29, 1987.
*237 Adams, Hunter, Angones, Adams, Adams & McClure and Christopher Lynch, Miami for appellants.
Richard A. Sherman, Fort Lauderdale, for appellees.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
The question in this case is whether punitive damages assessed against an uninsured motorist in a Florida trial arising out of a Florida accident are recoverable under an uninsured motorist policy purchased and issued in North Carolina.[1] The trial court applied the Florida rule precluding coverage for punitive damages under a liability policy, Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962); Nicholson v. American Fire & Casualty Ins. Co., 177 So.2d 52 (Fla. 2d DCA 1965)  which has been extended to UM coverage, see Suarez v. Aguiar, 351 So.2d 1086 (Fla. 3d DCA 1977), cert. dismissed, 359 So.2d 1210 (Fla. 1978)  notwithstanding that North Carolina law is to the contrary. *238 Mazza v. Medical Mutual Ins. Co., 311 N.C. 621, 319 S.E.2d 217 (1984). We reach the opposite conclusion that North Carolina law applies and therefore reverse.
There is no question, first of all, that the holding in Mazza, 319 S.E.2d at 220, which is specifically that there is liability coverage available under North Carolina law for punitive damages, applies a fortiori to uninsured motorist protection. See Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla. 1986); Moore v. Beacon Ins. Co., 54 N.C. App. 669, 284 S.E.2d 136 (1981), pet. for review denied, 305 N.C. 301, 291 S.E.2d 150 (1982); Stewart v. State Farm Mutual Automobile Ins. Co., 104 N.M. 744, 726 P.2d 1374 (1986) (UM coverage includes punitive damages). And it is certainly the general rule, which we ultimately apply here, that questions of insurance coverage are determined by the law of the state in which the parties reach their agreement, the premium is paid and the policy is issued. E.g., Continental Ins. Co. v. Howe, 488 So.2d 917 (Fla. 3d DCA 1986); Aetna Casualty & Surety Co. v. Diamond, 472 So.2d 1312 (Fla. 3d DCA 1985); Andrews v. Continental Ins. Co., 444 So.2d 479 (Fla. 5th DCA 1984), pet. for review denied, 451 So.2d 847 (Fla. 1984). It is true that this doctrine may be subject to an exception, or rather a qualification, which arises when the law of another jurisdiction which has a more significant relationship to the particular issue in controversy, should be applied in order to vindicate the policy or interest of that state. See State Farm Mutual Automobile Ins. Co. v. Olsen, 406 So.2d 1109 (Fla. 1981); AIU Ins. Co. v. Reese, 498 So.2d 966 (Fla. 2d DCA 1986); contra Brooks v. Sturiano, 497 So.2d 976 (Fla. 4th DCA 1986); see generally Proprietors Ins. Co. v. Valsecchi, 435 So.2d 290 (Fla. 3d DCA 1983) (Schwartz, C.J., dissenting), pet. for review denied, 449 So.2d 265 (Fla. 1984); Southerland & Waxman, Florida's Approach to Choice-of-Law Problems in Tort, 12 Fla.St.U.L.Rev. 447 (1984).
Thus in AIU, the court, in an action under a Florida uninsured motorist policy, applied the liability law of the place of the accident in determining the right of the plaintiff to recover. It held:
In the instant case the insurance policy provides in pertinent part coverage of legally entitled damages. Alabama clearly bears the most significant relationship to the particular determination of those damages. This is less an action in contract than it is an action for liability and damages applicable to [the uninsured motorist carrier's] right of subrogation [against the tortfeasor].
Alabama has the most significant relationship with the tort claim of Dawn M. Reese against her uninsured host driver. It clearly has a superior interest in having its statutory standards of conduct honored, and therefore, Alabama law should prevail.
498 So.2d at 966. The general approach which must be taken in a situation such as this is well illustrated by McNulty itself, which, although it is correctly regarded as the leading case establishing the Florida rule that there is no liability coverage for punitive damages, actually involved a policy issued in Virginia to a citizen of that state. The court said:
Since this is a suit on the contract, Virginia law governs the question whether an insurance policy against punitive damages contravenes public policy. Virginia cases reflect the same view of punitive damages as Florida cases, but no Virginia court has passed on whether an insurer may be liable for such damages. In seeking to ascertain what the Virginia policy would be, however, we must look to the law imposing the punitive damages to determine their character. This brings us back to Florida, where the accident occurred, where the action was brought and the damages awarded, and where the punitory and deterrent effects of the punitive damages awarded in this case would have their greatest impact.
307 F.2d at 434-35 [footnotes omitted].
The kind of analysis thus required of the question now before us reveals that no Florida policy or interest would be contravened by applying the North Carolina law *239 that the insurer is liable under the policy issued in that state.[2] Indeed, it is the existence of the right of subrogation by the UM carrier against the tortfeasor to which the AIU court referred which establishes that this is the case. As has been repeatedly emphasized by the Florida courts in adopting and applying the rule against the insurability of punitive damages under a liability policy, the reason for the doctrine is that
[t]he Florida policy of allowing punitive damages to punish and deter those guilty of aggravated misconduct would be frustrated if such damages were covered by liability insurance.
U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1064 (Fla. 1983). Obviously, or so Florida reasons, if the liability insurer, rather than the tortfeasor himself, were to pay the punitive damages award, the wrongdoer would not suffer the economic detriment which it is the very purpose of punitive damages to impose. See McNulty, 307 F.2d at 435; Commercial Union Ins. Co. v. Reichard, 404 F.2d 868 (5th Cir.1968); Travelers Ins. Co. v. Wilson, 261 So.2d 545 (Fla. 4th DCA 1972); Nicholson, 177 So.2d at 53; Perez v. Otero, 415 So.2d 101 (Fla. 3d DCA 1982); Florida Patient's Compensation Fund v. Mercy Hospital, Inc., 419 So.2d 348 (Fla. 3d DCA 1982); see generally Comment, Punitive Damages Insurance: Why Some Courts Take the Smart out of "Smart Money," 40 U.Miami L.Rev. 979 (1986).
But this principle has no application whatever to uninsured motorist coverage. UM protection insures only the injured plaintiffs rather than the wrongdoer. Because of this, decisively unlike a liability carrier, which may not recover any payment from the tortfeasor because he is its own insured, Metropolitan Property & Life Ins. Co. v. Chicago Ins. Co., 479 So.2d 114 (Fla. 1985), the uninsured motorist insurer becomes subrogated to the rights of his insureds, the plaintiffs, against the wrongdoer. Boynton, 486 So.2d at 558; Moore, 284 S.E.2d at 138. Thus, in the present circumstances, the carrier, upon payment of the loss, may recover the punitive damages award against the wrongdoer, just as the plaintiffs could. See Stewart v. State Farm Mutual Automobile Ins. Co., 104 N.M. at 745, 726 P.2d at 1375. She remains personally and fully liable for their payment  albeit (and irrelevantly) to a different entity. Florida's asserted interest in preserving the punishment and deterrence functions of punitive damages is therefore not in the least compromised by the recovery of punitive damages against an uninsured motorist carrier,[3] and there is consequently no basis for declining to apply the law of North Carolina that its carriers are responsible for these losses under policies paid for and issued within its borders.[4]
For these reasons, the judgment below is reversed and the cause remanded for further proceedings consistent herewith.
Reversed.
NOTES
[1] Mr. and Mrs. Shelton, North Carolina residents, purchased an automobile policy in that state, including uninsured motorist coverage from the appellee, Fidelity and Casualty Company of New York (F & C). The Sheltons were the named insureds. While on a trip to Florida, the Sheltons and their passengers, the plaintiffs-appellants, Mr. and Mrs. Adams, Illinois residents who were additional insureds under the policy, were involved in an automobile accident with an intoxicated, uninsured motorist named Sylvia Brannan. They sued both Brannan, and, as authorized by the policy, the carrier directly in the Dade County Circuit Court. At the trial, punitive damages of $750,000 were assessed against Brannan. In addition, Mr. Adams and Mrs. Adams received compensatory awards of $60,000 and $10,000 respectively. Small compensatory verdicts for Mr. and Mrs. Shelton were set aside by the trial court in an unchallenged order because their claims did not meet the no-fault threshold. (This ruling does not affect their rights to the punitive damages award. Nales v. State Farm Mutual Automobile Ins. Co., 398 So.2d 455 (Fla. 2d DCA 1981), pet. for review denied sub nom. Cronan v. Nales, 408 So.2d 1092 (Fla. 1981).) F & C then moved to limit its liability under the uninsured motorist policy, which had $200,000 limits, to the $70,000 in recoverable compensatory damages. The trial judge granted the motion, rejecting the plaintiffs' contention that the punitive damages award was recoverable up to the policy limits, and this appeal followed.
[2] For this reason, we need not decide whether the conflicting law of another jurisdiction may ever prevail over the lex loci contractus. See Brooks v. Sturiano, 497 So.2d at 977 (holding that it may not and certifying question).
[3] This reasoning may well indicate that this court was in error in applying the liability rule to the uninsured motorist situation as a matter of Florida law in Suarez 351 So.2d at 1088 and Arnette v. Continental Ins. Co., 490 So.2d 158 (Fla. 3d DCA 1986). However, that issue is not now before us.
[4] In finding, in effect, that there is no conflict, or only a "false" one, see Southerland & Waxman, supra, between North Carolina and Florida law in this instance, we do not intimate a view as to the proper resolution of the "real" conflict which would be involved if the question were whether a Florida punitive damages award is covered by a North Carolina liability policy.