[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/03/99
THOMAS  K. KAHN
CLERK**

_____

No. 98-6817

_____

D.C. Docket No. CV 96-B-2865-S

ROSS NEELY SYSTEMS, INC.,

Plaintiff-Appellant,

versus

OCCIDENTAL FIRE & CASUALTY
COMPANY OF NORTH CAROLINA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(December 3, 1999)**

Before BLACK and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

WILSON, Circuit Judge:

Ross Neely Systems, Inc. ("Ross Neely") sued its insurance company, Occidental Fire & Casualty Co. of North Carolina ("Occidental"), for coverage of a punitive damages award. The district court granted summary judgment in favor of Occidental. We affirm.

## BACKGROUND

Ross Neely is a trucking company that bought business auto insurance from Occidental. The policy covered "all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident." Occidental also promised to defend Ross Neely against accident claims. These broad provisions were modified by two pertinent endorsements.

First was a punitive damages exclusion: "This insurance does not apply to punitive and/or exemplary damage except in cases of wrongful death."[1] Ross Neely knew of this exclusion, for it unsuccessfully bargained to remove it. Ross Neely's insurance consultant told Ross Neely that Occidental would not offer the policy without the punitive damages exclusion. Indeed, he wrote, "I honestly do not know of any carrier actively writing liability in this state who offers coverage against

_____

[1]This exclusion was deemed approved by the Alabama Department of Insurance effective August 1, 1992.

punitive damages." Despite this exclusion, Ross Neely argues that the policy was ambiguous in light of a second endorsement.

This endorsement, called a "Form F" endorsement, provided coverage "to the extent of the coverage and limits of liability required" by Alabama motor carrier law and Alabama Public Service Commission (PSC) regulations. These PSC regulations required coverage for not only negligence, but also wanton acts. For bodily injuries to one person, the coverage required was $100,000. *See Ala. Pub. Serv. Comm'n R. 4.3*. If Occidental paid claims that would not have been covered but for the Form F endorsement, Ross Neely promised to reimburse Occidental.

In light of these two endorsements, Ross Neely argues that Occidental should have indemnified Ross Neely and defended it from punitive damages awarded in a tort suit arising from an accident. The accident occurred shortly after midnight when a Ross Neely truck rear-ended a car stopped at a traffic light. Ross Neely notified Occidental of the accident. Occidental hired an independent adjusting company to interview the drivers, appraise property damage, obtain a copy of the police accident report, and investigate medical claims.

The car's driver, Truss, suffered soft tissue injuries and three to four thousand dollars in medical expenses. Two of the passengers, whose injuries and medical

expenses were greater than Truss's, settled with Occidental for $33,000 and $165,000 respectively.  Truss, however, rejected Occidental's offer of $22,500 and sued.

Truss's complaint stated that he was "knocked, shocked, bruised and contused" and sought over one million dollars in compensatory and punitive damages. Occidental referred the defense of the case to outside counsel Curtis Wright.

Occidental wrote Ross Neely about the suit, denying coverage for punitive damages and noting that Truss's complaint sought damages in excess of the $1,000,000 policy limits.  Occidental's letter confirmed that Wright would defend Ross Neely against all claims, but that Ross Neely had the right to engage separate counsel to defend it against punitive damages and liability in excess of one million dollars.  Ross Neely decided to rely on Wright to defend it against all claims.  Wright did not notify Ross Neely that his representation was limited to defense of covered claims.  In particular, Wright did not tell Ross Neely that he was not defending the punitive damage claims, and indeed Wright moved for a directed verdict and submitted a posttrial motion on punitive damages.

After filing his tort suit, Truss offered to settle for $150,000.  Wright informed Occidental of the offer and recommended rejection.  During the course of the suit, Occidental offered to settle for $30,000 - $35,000.  Truss rejected these offers.  His

4

last offer to settle, for $95,000, was rejected and the case went to trial. Ross Neely agreed that up until the day of trial, Truss's case did not appear to have much merit.

The trial did not go well for Ross Neely. The investigating police officer, who had not been interviewed by either Occidental or Ross Neely's lawyer, testified that the truck had been traveling fast enough–and stopped late enough–to support an inference that the truck driver had been asleep at the wheel. Truss presented evidence that Ross Neely had violated federal regulations by requiring its driver to remain on duty for thirty-six hours, twenty-one of which were spent driving. To make matters worse, the truck driver testified in a manner that contradicted his deposition testimony and fell asleep during the trial in front of the jury.

The jury awarded Truss $45,000 in compensatory damages and $250,000 in punitive damages. Ross Neely moved to remit the punitive damages award. The state court denied the motion, finding Ross Neely "reprehensibl[y]" violated federal hours-of-service regulations by failing to monitor its drivers' compliance with the regulations and by requiring its driver to drive excessive hours.

Occidental refused to pay the punitive damage award. Ross Neely borrowed $250,000, paid the verdict, then sued Occidental. Ross Neely moved for partial summary judgment, arguing that the punitive damages exclusion was contrary to Alabama public policy, that the Form F endorsement nullified the punitive damages

5

exclusion, and that Occidental breached its duty of good faith. Pursuant to Rule 18, Alabama Rules of Appellate Procedure, the district court certified to the Alabama Supreme Court the question of whether Alabama public policy required coverage of punitive damages. The Alabama Supreme Court declined to answer the question. Occidental moved for summary judgment. The district court denied Ross Neely's motion and granted Occidental's motion. Ross Neely appealed.

DISCUSSION

This court reviews the district court's grant of summary judgment *de novo*, applying the same standards used by the district court. *See Killinger v. Samford Univ.*, 113 F.3d 196, 198 (11th Cir. 1997). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. Rule 56(c)*. An issue of fact is material and genuine if a rational factfinder could find for the nonmoving party on a fact necessary to establish an element of the claim under applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing an insurance policy, an unambiguous endorsement supplants conflicting general terms. *See Commercial Std. Ins. Co. v. General Trucking Co.*, 423

6

So. 2d 168 (Ala. 1982). Although this court should construe exclusions narrowly, it must not favor an insured contrary to the policy's clear meaning. *See, e.g., Wakefield v. State Farm Mut. Auto. Ins. Co.*, 572 So. 2d 1220, 1222 (Ala. 1990); *State Farm Mut. Auto. Ins. Co. v. Lewis*, 514 So. 2d 863, 865 (Ala. 1987). Likewise, an unambiguous contract must be enforced as written. *See Kinnon v. Universal Underwriters Ins. Co.*, 418 So. 2d 887, 888 (Ala. 1982). The Occidental policy clearly and unambiguously excludes punitive damages: "This insurance does not apply to punitive and/or exemplary damage except in cases of wrongful death." Therefore, Occidental need not cover Ross Neely's punitive damage award unless the exclusion is contrary to public policy or was nullified by a contrary provision elsewhere in the policy.

Under these circumstances, we cannot say that Alabama public policy bars Occidental from excluding coverage of punitive damages. Although no Alabama cases have reached the issue, other courts have approved similar exclusions. *See, e.g., Lincoln Nat'l Health & Cas. Ins. Co. v. Brown*, 782 F. Supp. 110 (M.D. Ga. 1992); *Hodgin v. Allstate Ins. Co.*, 935 S.W. 2d 614 (Ky. Ct. App. 1996). The Alabama agency responsible for regulating insurance specifically allows insurers to file for approval of policies containing punitive damages exclusions. *See Rate Bulletin No.*

*245, Ala. Dept. of Ins.* (Dec. 1991 - Feb. 1992).[2] In fact, the particular exclusion at issue was deemed approved by the Alabama Department of Insurance. *See, e.g., Jameson v. Mutual Life Ins. Co.*, 292 F. Supp. 834, 836 (E.D. Tex. 1968) (when rider was approved by state department of insurance, it was lawfully part of the policy), *aff'd in pertinent part*, 415 F.2d 1017 (5th Cir. 1969).

Ross Neely argues that Alabama public policy bars an insurer from excluding punitive damages in the specific instance when the insured is an innocent employer only vicariously liable. *Cf. McNulty*, 307 F.2d at 440. Its argument fails in light of the state court verdict finding Ross Neely liable for punitive damages. As the state court noted in denying Ross Neely's posttrial motions, substantial evidence backed the verdict. For example, Ross Neely directed its driver to continue driving for hours before and after the accident (up to twenty-one of thirty-six hours). The court also noted that Ross Neely inadequately monitored its employees' compliance with hours-of-driving regulations. In light of these facts, this court declines to speculate as to

---

[2]Alabama insurers must cover punitive damages for wrongful death. This is due to a quirk in Alabama law, which considers all damages for wrongful death punitive. Unless Alabama law required coverage, decedents' estates would lose access to insurance proceeds, even if the insured was merely negligent. To avoid this forfeiture, Alabama law requires coverage of punitives for wrongful death. *See, e.g., Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 439 (5th Cir. 1962) (partially superseded by statute on other grounds, *United Servs. Auto. Ass'n v. Webb*, 369 S.E.2d 196, 197 (Va. 1988)).

Alabama public policy regarding this specific issue, particularly when the Alabama Supreme Court has declined to rule on the issue.

Neither did the Form F endorsement obligate Occidental to cover punitive damages. Form F required Occidental to provide $100,000 in coverage as required by Alabama statutes and regulations. The statute required coverage for negligence. *Ala. Code § 37-3-18* (1975). The regulations required coverage for wanton acts as well as negligence. The district court ruled that the Alabama PSC exceeded its authority in expanding coverage. *See Freeman v. City of Mobile*, 11th Cir. 1999, __ F.3d __ (No. 97-6047, Oct. 25, 1999) (agency cannot amend or supplant act of Alabama legislature); *Ex parte State Dept. of Human Resources*, 548 So. 2d 176 (Ala. 1988) (statute prevails over conflicting regulation). *See also Timmons v. City of Montgomery*, 641 So. 2d 1263, 1266 (Ala. Crim. App. 1993). We need not reach the issue because even if the PSC could require coverage for wanton acts, Occidental's duty to pay was never triggered.

The purpose of Form F is only to serve as a guarantee to the public that the insurer will be liable for any damages awarded if the insured is unable to pay. Form F does not alter the relationship between the insured and the insurer. Therefore, Occidental served only as a surety to Ross Neely's performance. *See, e.g., Command Transp., Inc. v. B.J.'s Wholesale Club, Inc.*, 62 F.3d 18, 20 (1st Cir. 1995). Since

9

Ross Neely was able to borrow the money and pay Truss his punitive damages, Occidental's duty to pay never arose. *See, e.g., Service Stages, Inc. v. Central Sur. & Ins. Co.*, 165 So. 248 (Ala. 1936); *Fidelity & Cas. Co. v. Jacks*, 165 So. 242 (Ala. 1936). Further, even if Occidental had paid, Ross Neely would have been required to reimburse Occidental. Therefore, even if Occidental theoretically breached a duty to pay, Ross Neely suffered no damages.

The court also found that there was no genuine issue of material fact as to whether Occidental fulfilled its duty of good faith in defending Ross Neely. In defending an insured under a reservation of rights,[3] an insurer has a potential conflict of interest. Because the insured may face greater liability than the insurer, whose liability is capped by policy exclusions and limits, the insurer's duty of good faith includes four elements: (1) the insurer must thoroughly investigate the cause of the accident and the severity of the plaintiff's injuries; (2) the insurer must retain competent defense counsel who will represent only the insured; (3) the insurer must

---

[3]Occidental wrote Ross Neely, "punitive damages were not contemplated nor coverage afforded therefore by this Policy of Insurance. Thus, at the present time, we will provide you with the defense, but will not indemnify you for punitive damage awards if any be rendered against you." Noting that the complaint sought in excess of $1,000,000, Occidental stated, "This amount exceeds the coverage afforded by our policy..." Ross Neely's Complaint treated this letter as a reservation of rights. Even though Occidental's letter did not specifically reserve its rights, it notified the insured that Occidental was not planning to pay the entire damages Truss sought. This suffices to trigger the enhanced duty of good faith.

10

fully inform the insured of all developments relevant to its coverage and the progress of the lawsuit, including all settlement offers; and (4) the insurer must refrain from any action that demonstrates a greater concern for the insurer's monetary interest than for the insured's financial exposure. *See L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987).

There is no issue of material fact as to whether Occidental conducted an adequate investigation. Occidental hired independent investigators who interviewed witnesses, investigated the accident scene, examined the police report, and obtained medical records. Ross Neely argues the investigation was insufficient because no one interviewed the state trooper who investigated the accident. This interview would have supposedly revealed that Ross Neely's driver was driving approximately fifty miles per hour in a forty mile-per-hour zone, that his line of sight was unrestricted for 2500 feet, and that skid marks showed he started to brake only thirty feet from the car. All this information was available from Occidental's investigation or from Ross Neely's own sources. The failure to interview the police officer does not create a material issue of fact as to the adequacy of the investigation.

The second element is the duty to engage adequate defense counsel. Ross Neely does not dispute that Wright defended it adequately. The evidence shows that Wright properly regarded his client to be Ross Neely, not Occidental.

11

Third is the duty to keep Ross Neely informed about the progress of the case, including settlement offers. Occidental told Ross Neely that it was not planning to cover punitive damages and that Ross Neely should consider hiring its own counsel to represent it on the punitive damages claims. As the lawsuit progressed, Occidental informed Ross Neely of two settlement demands from the tort plaintiff, and Ross Neely agreed those demands should be rejected.

As for the fourth element–acting with a greater concern for Occidental's interest than Ross Neely's–there is no material issue of fact. Merely refusing to settle does not mean the insurer breached its duty. *See Universal Underwriters Ins. Co. v. East Cent. Ala. Ford-Mercury, Inc.*, 574 So. 2d 716, 726 (Ala. 1990). Occidental settled the claims of two passengers with more serious injuries than Truss's. As the district judge noted, both Ross Neely and Occidental considered the financial risk in proceeding to trial to be slight. Events proved them wrong. Occidental's decision not to settle before trial must be viewed in light of the facts available to it at the time, not in hindsight. When Occidental and Wright evaluated the advisability of settling, it appeared Truss had no basis for punitive damages. Ross Neely concurred in this assessment at the time.

Nor is an insurer under a duty to settle a compensatory damage award merely to minimize its insured's exposure to punitive damages. *See Lira v. Shelter Ins. Co.,*

12

913 P.2d 514, 516 (Colo. 1996).  Ross Neely has presented no evidence to create a material issue of fact that Occidental breached its enhanced duty of good faith.  The district court correctly granted summary judgment.

AFFIRMED.