804 So.2d 1107 (2001)
Pamela HILL
v.
Randy Joe CAMPBELL et al.
2980439.
Court of Civil Appeals of Alabama.
June 15, 2001.
*1108 Harvey B. Morris and Brent L. Parker of Morris, Cloud & Conchin, P.C., Huntsville, for appellant.
Ruth Ann Hall of Spurrier, Rice, Wood & Hall, Huntsville, for Farmers Insurance Exchange.
David R. Pace of Lange, Simpson, Robinson & Somerville, L.L.P., Huntsville, for American National Property & Casualty Company.

On Application for Rehearing
YATES, Presiding Judge.
The opinion of January 12, 2001, is withdrawn and the following is substituted therefor.
The plaintiff Pamela Hill appeals from a summary judgment in favor of American National Property and Casualty Company (hereinafter "ANPAC") and Farmers Insurance Exchange ("Farmers"). On March 7, 1996, Hill was injured in an automobile wreck in Lauderdale County. She was a passenger in a car owned and driven by Edward McIntyre. McIntyre was insured by Farmers. McIntyre's policy provided for underinsured-motorist coverage. The policy also included an amendment that excluded coverage for any claim for punitive or exemplary damages.
Hill was injured when a vehicle driven by Randy Joe Campbell struck McIntyre's car. At the time of the wreck, Campbell was intoxicated and was traveling on the wrong side of the road; he left the scene after the collision. Campbell was insured by ANPAC. His policy included an amendment that excluded coverage for any claim for punitive or exemplary damages.
Hill sued Campbell. ANPAC moved to intervene in the case on Campbell's behalf; the court granted the motion. After a trial, the jury awarded Hill $15,000 in compensatory damages and $10,000 in punitive damages. Hill sought a writ of garnishment against ANPAC and Farmers for the amount of the unpaid judgment. ANPAC paid Hill $15,000 for the compensatory damages; however, it would not pay the punitive-damages award.
Hill filed a motion requesting the trial court to set a hearing to determine the liability of ANPAC and Farmers for the unpaid portion of the judgment. In response *1109 to Hill's motion, ANPAC moved for a summary judgment, arguing that Campbell's policy specifically excluded coverage for punitive damages. Farmers also moved for a summary judgment, arguing that McIntyre's policy excluded coverage for punitive-damages claims. Farmers further argued that punitive damages were not recoverable under an underinsured/uninsured-motorist policy. Following a hearing, the trial court granted both summary judgment motions.[1]
The policy issued by Farmers contains the following exclusion:
"Regardless of any other provision, this policy does not cover any claim or suit for punitive or exemplary damages. However, this exclusion does not apply to any case involving a Wrongful Death Statute."
The policy issued by ANPAC contained an exclusion, "[f]or punitive or exemplary damages," but the policy provided: "However, this exclusion does not apply to wrongful death."
The issues on appeal are whether it violates the public policy of Alabama for an insurance company, when the claim is not based on wrongful death, to exclude coverage for punitive damages, and whether excluding coverage for punitive damages violates the Alabama Uninsured Motorist Act, Ala.Code 1975, § 32-7-23. An insurance company can limit coverage through exclusions, so long as those exclusions do not violate a statute or public policy. Hooper v. Allstate Ins. Co., 571 So.2d 1001 (Ala.1990).
We recognize that § 6-5-410, Ala.Code 1975, the Alabama Wrongful Death Act, has been interpreted to allow the recovery of punitive damages only. Campbell v. Williams, 638 So.2d 804 (Ala.1994), cert. denied, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). A standard liability policy that excluded coverage for punitive damages in a wrongful-death case would contravene Alabama law. However, as the court in Campbell noted, "Alabama has historically treated actions resulting in death differently from actions causing lesser injury. The `enormity of the wrong' justifies the difference in treatment." 638 So.2d at 810.
First, we will address whether it violates the public policy of Alabama for ANPAC to exclude coverage for punitive damages awarded against its insured, Campbell, in this personal-injury action. Hill argues that the exclusion violates public policy, because punitive damages serve the public benefit of punishment and deterrence. She cites the following:
"[T]he public policy upon which punitive damages are based is to completely eradicate intentional conduct, by the particular defendant before the court, and to deter others from similar conduct. The public policy is not merely to discourage such conduct, but to make it economically unattractive to others faced with a choice to act as the defendant did. Complete deterrence is the goal of punitive damages."
Smith v. States Gen. Life Ins. Co., 592 So.2d 1021, 1027 (Ala.1992) (Shores, J., concurring in part and dissenting in part). Hill argues that if ANPAC pays the punitive damages, its insured will be punished *1110 by being assessed substantially higher premiums and, possibly, by being unable to get insurance. She also argues that there has been no correlating reduction in premiums since the Department of Insurance began allowing punitive-damages exclusions in the 1990s.
ANPAC argues that forcing it to pay for the intentional acts of its insured shifts the responsibility for paying those damages and frustrates the deterrent purpose of punitive damages. ANPAC argues that to allow a person to insure himself against punishment is inconsistent with the establishment of sanctions against such conduct. ANPAC further argues that courts in other jurisdictions have held that a culpable party should not be permitted to escape civil consequences through insurance and that those cases have held, conversely, that to allow insurance for intentional acts creating liability for punitive damages violates public policy. At oral argument, ANPAC noted that the Department of Insurance allows the exclusion of coverage for punitive damages and stated that such exclusions are becoming standard in the insurance industry.
In American Fidelity & Casualty Co. v. Werfel, 230 Ala. 552, 162 So. 103 (1935), our supreme court held that where the automobile insurance policy was broad enough to cover liability for wrongful death under the Homicide Act of Alabama, § 5696, Code of 1923 (precursor to the current Wrongful Death Act), under which only punitive damages could be awarded, the insurer was liable to pay an award of punitive damages rendered against its insured in a personal-injury action. However, Werfel is distinguishable from the present case, because the contract in the present case specifically excludes coverage for punitive damages in personal-injury cases and the contract in Werfel did not.
We find Hooper, supra, 571 So.2d 1001, to be more analogous with the present case. Insurance companies have the right to limit their liability and to write policies with narrow coverage. Id. at 1001. In Hooper, the plaintiff alleged that the defendant's negligence or wantonness in handling a shotgun had caused it to fire and injure him. The plaintiff also filed a criminal complaint against the defendant alleging first-degree assault. The defendant pleaded guilty to second-degree assault. The defendant's homeowner's policy included an exclusion for "any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person." 571 So.2d at 1002. The plaintiff argued that the exclusion contravened public policy.
The supreme court in Hooper rejected the plaintiffs contention that public policy was violated:
"[I]nsurance companies have the right to limit their liability and to write policies with narrow coverage. Johnson [v. Allstate Ins. Co., 505 So.2d 362 (Ala.1987).] No public policy considerations dictate that an insurer must indemnify a third party for the criminal acts of an insured. Similarly, [the plaintiff's] claim that the exclusion is unconscionable is not well taken.
"Because the exclusion unambiguously excluded coverage for injury or damage that might reasonably be expected to result from criminal acts by an insured, without a requirement that the acts be intentional or that the injury be intended, and because [the defendant's] action fell squarely within that exclusion, Allstate was under no duty to defend [the defendant] or to indemnify [the plaintiff] for his injuries."
571 So.2d at 1003.
In Ross Neely Systems, Inc. v. Occidental Fire & Casualty Co., 196 F.3d 1347 *1111 (11th Cir.1999), the insured trucking company sued its insurer, seeking coverage for punitive damages awarded in a personalinjury action involving one of its trucks. The insurance company refused to indemnify the trucking company for a $250,000 punitive-damages award, because the policy excluded coverage for punitive damages in all but wrongful-death cases. The trucking company argued, among other things, that it was against the public policy of Alabama for the insurance company to exclude coverage for punitive damages. The federal district court certified the question whether Alabama public policy required coverage of punitive damages. The Alabama Supreme Court declined to answer the question. The district court held that it did not violate public policy, and the United States Court of Appeals for the 11th Circuit affirmed. The court of appeals noted that courts in Georgia and Kentucky had approved similar exclusions and that the Alabama Insurance Department had approved this exclusion in 1992.
Campbell's insurance policy with ANPAC clearly excluded coverage for punitive damages in all but wrongful-death cases. We find no public policy violated by ANPAC's exclusion of coverage for punitive damages, when the complaint was not based on wrongful death, because Hill has been made whole for her injuries and punitive damages paid by ANPAC would serve little or no purpose. Although Hill also argued that there had been no corresponding reduction in premiums when the exclusion was added to Campbell's policy and that this fact violated public policy, nothing in the record supports this contention. Therefore, the trial court correctly entered a summary judgment for ANPAC.[2]
The second issue is whether Farmers' exclusion of coverage for punitive damages violates the Alabama Underinsured/Uninsured Motorist Statute, § 32-7-23, Ala.Code 1975. The purpose of that statute is to protect those financially and ethically responsible people who obtain automobile-liability insurance, from injuries caused by those not so responsible. Aetna Cas. & Sur. Co. v. Turner, 662 So.2d 237 (Ala.1995).
Section 32-7-23(a) provides, in pertinent part:
"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom...."
The term "uninsured motor vehicle" includes motor vehicles with respect to which:
"(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less *1112 than the damages which an injured person is legally entitled to recover."
§ 32-7-23(b)(4).
Hill argues that this court should follow Lavender v. State Farm Mutual Automobile Insurance Co., 828 F.2d 1517 (11th Cir.1987), wherein the United States Circuit Court of Appeals for the 11th Circuit held that where an insured motorist was entitled to punitive damages from an underinsured motorist, he could recover punitive damages under Alabama law from the insurance carrier that had provided the motorist with underinsured-motorist coverage. The federal court held that § 32-7-23(b)(4) clearly required State Farm, the underinsured-motorist insurance carrier, to pay its insured for all damages that its insured was "legally entitled to recover" from the underinsured motorist.
The federal court in Lavender stated that "when the contract which is being sued upon provides that punitive damages will be paid," then punitive damages are recoverable under UM coverage. In the present case, however, the contract clearly prohibits the recovery of punitive damages under the UM coverage, except in wrongful-death cases. The question thus becomes whether an insurance policy that excludes coverage for punitive damages except in the case of wrongful death contravenes the uninsured-motorist statute.
Farmers argues that Alabama courts are clearly not bound by the Lavender court's interpretation of Alabama law and, accordingly, that we should not follow that case. Farmers argues that the policy in Lavender did not contain a specific exclusion for punitive damages. Farmers further argues that it should not be liable under its UM coverage for paying punitive damages, because the purpose of punitive damages is to punish the wrongdoer and Farmers has done no wrong. In addition, Farmers points out that § 32-7-23(a) specifically mentions damages that are recoverable "because of bodily injury, sickness or disease, including death resulting therefrom," but does not mention punitive damages. Farmers argues that this fact creates an inference that the legislature intentionally excluded punitive damages.
The federal court in Lavender addressed State Farm's argument that it should not be liable for paying an award of punitive damages in that case because the purpose of awarding punitive damages is to punish a wrongdoer:
"State Farm readily admits that as a liability carrier, it would be liable for punitive damages against its insured even though the insurance company itself would have done no wrong. The argument that punitive damages are not recoverable in a breach of contract action is frivolous when the contract which is being sued upon provides that punitive damages will be paid. The effect of the Alabama statute is to require State Farm's contract to include that agreement."
828 F.2d at 1518.
The federal court in Lavender cites several cases from other jurisdictions, which, it states, have held that a carrier providing its insured with uninsured-motorist coverage is liable for all legal damages the insured is entitled to recover against an uninsured motorist. However, the law in some of those states has changed since Lavender was written in 1987, and two of the cases cited by Lavender do not stand for that proposition.
The Lavender court cited Home Indemnity Co. v. Tyler, 522 S.W.2d 594 (Tex.Civ. App.Houston [14th Dist.] 1975). In Tyler, the Texas court held that punitive damages were recoverable under the uninsured-motorist provisions of an insurance *1113 policy. The court stated that uninsured-motorist laws are remedial in nature and should be interpreted liberally. The court went on to note that the policy involved in that case promised to pay the insured "all sums" that the insured was legally entitled to recover. The Texas court wrote:
"The public policy considerations which might stand against indemnifying a wrongdoer are not relevant to the considerations in the present case. There is no public policy against an insurance company's promise to pay an insured the amount which the insured party has become entitled to recover because of the recklessness of some third party."
522 S.W.2d at 597. However, in a more recent case, that same Texas appellate court held that punitive damages are not recoverable under UM coverage, because punitive damages are intended to punish the wrongdoer and to deter future wrongdoers and neither purpose would be served by requiring the insurer to pay punitive damages. Milligan v. State Farm Mut. Auto. Ins. Co., 940 S.W.2d 228 (Tex.App. Houston [14th Dist.] 1997).
Other appellate courts in Texas have also held, as the court did in Milligan, that punitive damages are not recoverable under UM coverage. See Government Employees Ins. Co. v. Lichte, 792 S.W.2d 546 (Tex.App.El Paso 1990) (appeals court held that punitive damages are not recoverable under UM coverage); Vanderlinden v. United Servs. Auto. Ass'n Property & Cas. Ins. Co., 885 S.W.2d 239 (Tex. App.Texarkana 1994) (appeals court held that punitive damages are intended to punish and deter, not compensate, and that it is against the purpose of UM coverage to cover punitive damages); State Farm Mut. Auto. Ins. Co. v. Shaffer, 888 S.W.2d 146 (Tex.App.Houston [1st Dist.] 1994) (appeals court held that, under rules of construction of insurance contracts, language of the policy would allow coverage but the legislative intent of the UM statute and motor-vehicle-safety laws was to provide coverage from financial loss caused by negligent, irresponsible motorists). The Texas Supreme Court would not address the issue. See Lichte v. Government Employees Ins. Co., 825 S.W.2d 431 (Tex. 1991).
The Lavender court cited Carroway v. Johnson, 245 S.C. 200, 139 S.E.2d 908 (1965). However, Carroway did not involve an uninsured motorist. In Carroway, the South Carolina court held that punitive damages were recoverable by the plaintiff under the policy issued to the defendant's insured. The insurance company for the defendant in that automobile-accident case argued that the policy did not cover a punitive-damages award. The defendant in Carroway argued that Laird v. Nationwide Insurance Co., 243 S.C. 388, 134 S.E.2d 206 (1964), supported its argument that punitive damages were recoverable under the liability policy. In Laird, the court held that the uninsured-motorist law of South Carolina and a policy of insurance issued to conform therewith did not provide for payment of punitive damages arising out of a collision with a vehicle driven by an uninsured motorist. The court in Carroway disagreed, noting the distinction between a voluntary liability policy and UM coverage and holding that the liability policy did not limit recovery to actual or compensatory damages and was sufficiently broad to cover punitive damages.
The Lavender court cited Valley Forge Insurance Co. v. Jefferson, 628 F.Supp. 502 (D.Del.1986). Valley Forge did not involve UM coverage either. The court in Valley Forge held that under Delaware law the automobile liability insurer was liable for punitive damages assessed against its insured and that an excess policy *1114 issued to the driver's parents did not provide liability coverage for the driver in an accident involving his car. In 1992, the Delaware Supreme Court did address UM coverage and punitive damages in Jones v. State Farm Mutual Automobile Insurance Co., 610 A.2d 1352 (Del.1992), holding that both from contractual and public-policy standpoints punitive damages are afforded under Delaware law to those protected by UM coverage and that an insured's UM coverage mirrors its liability coverage.
The Lavender court cited Lipscombe v. Security Insurance Co. of Hartford, 213 Va. 81, 189 S.E.2d 320 (1972). In Lipscombe, the Virginia court held that insurance companies may be required to pay punitive damages assessed against an uninsured motorist.
The Lavender court also cited Mullins v. Miller, 683 S.W.2d 669 (Tenn.1984). The Mullins court construed the Tennessee UM statute to require that any automobile-liability insurance policy issued in Tennessee provide uninsured-motorist coverage for punitive damages as well as for compensatory damages. However, the Tennessee legislature later amended the statute. The Tennessee Supreme Court held that the amendment adding the word "compensatory" to the uninsured-motorist statute limited the requisite uninsured-motorist coverage to coverage for compensatory damages, but that insurers may voluntarily offer uninsured-motorist coverage for punitive damages. Carr v. Ford, 833 S.W.2d 68 (Tenn.1992).
Other courts have addressed the question whether one can recover punitive damages under UM coverage. The Louisiana court in Sharp v. Daigre, 555 So.2d 1361 (La.1990), held that public policy does not prohibit an insurer's providing UM coverage for exemplary or punitive damages. The court in Bauer v. White, 532 So.2d 506 (La.App. 1st Cir.1988), held that in the absence of any exclusion for punitive damages in the liability portion of a contract, UM coverage includes coverage for punitive damages. The court in Fontana v. Louisiana Sheriffs' Automobile Risk Program, 697 So.2d 1030 (La.App. 1st Cir. 1997), held that the language of a liability policy determines the extent to which UM coverage includes exemplary damages; the court held that the policy in that case specifically excluded recovery of punitive damages.
The court in Aetna Casualty & Surety Co. v. Craig, 771 P.2d 212 (Okla.1989), held that an insurer's payment of punitive damages under UM coverage contravenes the public policy of Oklahoma. California, by statute, has excluded the recovery of punitive damages from UM coverage. Cal. Ins.Code § 11580.2(a)(1)(Deering 1996); California State Auto. Ass'n Inter-Ins. Bureau v. Carter, 164 Cal.App.3d 257, 210 Cal.Rptr. 140 (1985). In Rhode Island, the uninsured-motorist statute was held not to require an automobile insurer to provide coverage for punitive damages, and an insured driver was not rendered "uninsured" by virtue of the injured party's inability to recover punitive damages. Allen v. Simmons, 533 A.2d 541 (R.I.1987).
The Georgia Court of Appeals has held that no recovery of punitive damages may be had against an uninsured-motorist carrier. Roman v. Terrell, 195 Ga.App. 219, 393 S.E.2d 83 (1990). The Georgia Supreme Court has not addressed the issue, but in Greenwood Cemetery, Inc. v. Travelers Indemnity Co., 238 Ga. 313, 232 S.E.2d 910 (1977), the court held that the recovery of punitive damages does not violate public policy per se, in the context of liability coverage.
In Adams v. Brannan, 500 So.2d 236 (Fla.Dist.Ct.App.1986), the insured sought coverage for a punitive-damages *1115 award assessed in a Florida trial involving the insured's motor vehicle accident with an uninsured motorist. North Carolina law governed the interpretation of the policy, because the policy had been purchased and issued in North Carolina and North Carolina had allowed the recovery of punitive damages under UM coverage. The insurer argued that Florida public policy prevented the enforcement of North Carolina law. The Florida court disagreed, holding that the general principle against providing insurance coverage for punitive damages had no application to uninsured-motorist coverage. The court stated:
"[Uninsured-motorist] protection insures only the injured plaintiffs rather than the wrongdoer. Because of this, decisively unlike a liability carrier, which may not recover any payment from the tortfeasor because he is its own insured, the uninsured motorist insurer becomes subrogated to the rights of his insureds, the plaintiffs against the wrongdoer. Thus, in the present circumstances, the carrier, upon payment of the loss, may recover the punitive damages award against the wrongdoer, just as the plaintiffs could. She remains personally and fully liable for their paymentalbeit (and irrelevantly) to a different entity. Florida's asserted interest in preserving the punishment and deterrence functions of punitive damages is therefore not in the least compromised by the recovery of punitive damages against an uninsured motorist carrier, and there is consequently no basis for declining to apply the law of North Carolina that its carriers are responsible for these losses under policies paid for and issued within its borders."
Id. at 239 (citations and footnotes omitted). We note that an insurer in Alabama that pays uninsured- or underinsured-motorist benefits to its insured is entitled to subrogation from the wrongdoer. Aetna Cas. & Sur. Co. v. Turner, 662 So.2d 237 (Ala. 1995).
In Stinbrink v. Farmers Ins. Co. of Arizona, 111 N.M. 179, 803 P.2d 664 (1990), the plaintiff was injured by a drunk, uninsured motorist. The plaintiff sued his own insurance company for uninsured-motorist coverage. The plaintiff's insurance contract specifically excluded coverage for punitive damages against an uninsured motorist. The New Mexico UM statute provided that an insurance policy must have UM coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... death ... or destruction of property." The New Mexico Supreme Court noted two competing policy interests: the public policy behind the uninsured-motorist statute, which seeks to protect innocent victims of uninsured motorists; and the right of parties to freely contract within the context of an insurance policy. The court held that punitive damages are as much a part of the potential award under the uninsured-motorist statute as damages for bodily injury, and, therefore, cannot be contracted away.
Alabama's UM statute mandates that all automobile insurance contracts offer uninsured/underinsured motorist coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom...." We note that Alabama's Wrongful Death Act is unique in the nation in that it has been interpreted to allow only punitive damages on a wrongful-death claim. However, in the statute the legislature did not distinguish between damages arising from personal injury and damages arising from wrongful death. To make such a distinction when *1116 none exists in the statute would force this court to guess the intent of the legislature rather than to look at the plain meaning of the words the legislature used. See DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998). "`[W]here an exclusion in a policy is more restrictive than the uninsured motorist statute, it is void and unenforceable.'" State Farm Mut. Auto. Ins. Co. v. Scott, 707 So.2d 238, 242 (Ala.Civ.App.1997), quoting Watts v. Preferred Risk Mut. Ins. Co., 423 So.2d 171, 175 (Ala.1982) (citing Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mitchell, 373 So.2d 1129 (Ala.Civ.App.1979)).
As indicated earlier in this opinion, a majority of the jurisdictions addressing this issue now holds that an insurance company is not liable for punitive damages under UM coverage, with a few notable exceptions. Our UM statute does not distinguish between damages for personal injury and damages for wrongful death. While this court might agree with the majority of jurisdictions that an insurance company should not have to pay punitive damages for another's wrongful act under UM coverage when the insured has been made whole through compensatory damages, we cannot reach that result without resorting to judicial activism. It is our job to say what the law is, not what it should be. We are bound by the words used by the legislature in our UM statute.[3]
Although it does not violate the public policy of Alabama for an insurance company to exclude coverage of punitive damages in a liability policy if it chooses to do so, such an exclusion does violate the Uninsured Motorist Act as written. Accordingly, the judgment in favor of ANPAC is affirmed; the judgment in favor of Farmers is reversed; and the case is remanded for further proceedings.
OPINION OF JANUARY 12, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
CRAWLEY, J., concurs.
THOMPSON, J., concurs specially.
PITTMAN and MURDOCK, JJ., concur in part and concur in the result in part.
*1117 THOMPSON, Judge, concurring specially.
I dissented from that portion of the January 12, 2001, opinion addressing the question whether a punitive-damages exclusion in an uninsured-motorist policy is enforceable. However, after this court had released its opinion of January 12, 2001, in this present case, the supreme court disposed of this issue in Omni Insurance Co. v. Foreman, 802 So.2d 195 (Ala. 2001). I am therefore bound by precedent to concur with the lead opinion on this application for rehearing.
MURDOCK, Judge, concurring in part and concurring in the result in part.
The majority affirms the summary judgment in favor of ANPAC, but reverses the summary judgment in favor of Farmers. I concur in the opinion as to ANPAC; I concur only in the result as to Farmers.
Among the cases relied upon by the majority in reversing the summary judgment in favor of Farmers is Lavender v. State Farm Mutual Automobile Insurance Co., 828 F.2d 1517 (11th Cir.1987). As the majority notes, Farmers argues that the uninsured-motorists insurance policy in Lavender, unlike the policy at issue in the present case, did not contain a specific exclusion for punitive damages. Farmers also argues that the purposes of punitive damages are to deter others from similar conduct and to punish the wrongdoer, and that a punitive-damages award against Farmers does neither.
On rehearing, Farmers argues that Ala. Code 1975, § 32-7-23(a), is unambiguous and requires uninsured/underinsured-motorists coverage "for the protection" of the person insured. Farmers suggests that by focusing on "protection" the statute contemplates a compensatory purpose, but makes an exception in wrongful-death cases.[4] Farmers also argues that the purpose of the statute is to protect the responsible driver, who has obtained automobile liability insurance, from injuries caused by those not responsible enough to obtain liability insurance, but that the ruling of this court will mean that uninsured/underinsured-motorists policies will now provide broader coverage than do liability policies. (Farmers notes that Ala. Code 1975, § 32-7-22(b), a part of the Alabama Motor Safety Responsibility Act (requiring motor-vehicle liability policies to provide insurance from "liability imposed by law for damages ... because of bodily injury ... or death"), and Ala.Code 1975, § 32-7A-4, a part of Alabama's Mandatory Insurance Act, contain language similar to that in the uninsured/underinsured-motorists statute.)
As the majority notes, our Supreme Court recently decided the case of Omni Insurance Co. v. Foreman, 802 So.2d 195 (Ala.2001), holding that Alabama's uninsured/underinsured-motorists statute permits the recovery of punitive damages. One of the cases relied upon by our Supreme Court in Omni Insurance Co. was this court's January 12, 2001, opinion in the present case. Unlike Judge Thompson, I was not a member of this court when it issued that January 12, 2001, opinion. As Judge Thompson notes, however, Omni Insurance Co. has since been decided, and we are bound by it. I therefore concur in the result reached by the majority *1118 to reverse the summary judgment in favor of Farmers.
PITTMAN, J., concurs.
NOTES
[1] After this case was submitted on appeal, the legislature enacted the Mandatory Automobile Liability Insurance Act, § 32-7A-1 et seq., Ala.Code 1975. Alabama drivers must now have a minimum of $20,000 in liability insurance for personal-injury damage for one person and $10,000 for property damage. § 32-7-6. Although this new law will alleviate problems related to uninsured-motorist coverage in some cases, underinsured-motorist coverage will still be an issue when the minimum amount of insurance does not cover the damage.
[2] Because the trial court properly entered a summary judgment in favor of ANPAC, we think it unnecessary to address the two cases from other jurisdictions cited by ANPAC holding that it is against public policy for an insurance company to provide insurance for punitive damages if it chose to do so in its policy. We add that an attorney general's advisory opinion issued in 1978 and found in the record at C.R. 126-28, has held that it is not against the public policy of this state for an insurance company to insure against one's liability for punitive damages imposed in civil cases.
[3] On application for rehearing, Farmers argues that upholding the punitive-damages exclusion in ANPAC's liability policy necessitates upholding the validity of the punitive-damages exclusion in Farmers' UM coverage or else the result would be inconsistent. Specifically, Farmers argues that § 32-7-22, governing liability policies, does not distinguish between damages from bodily injury and damages from death, and, therefore, that upholding ANPAC's exclusion would be inconsistent with reversing Farmers' exclusion. However, § 32-7-22 is not applicable to ANPAC's policy. Section 32-7-22 applies to insurance policies required to be certified as proof of financial responsibility by the Department of Public Safety to permit the vehicle to continue to be registered and to avoid loss of license and registration. Thus, the Act applies only after the operator of the automobile has had a conviction for an offense that required revoking his driver's license. See Hutcheson v. Alabama Farm Bureau Mut. Cas. Ins. Co., 435 So.2d 734 (Ala.1983).

Farmers also argues on rehearing that reversing its exclusion would be inconsistent with § 32-7A-4, the new Mandatory Insurance Act, because that Act does not distinguish between damages for bodily injury and for death. However, that Act was not in effect when the accident in this case occurred.
Furthermore, in Omni Insurance Co. v. Foreman, 802 So.2d 195 (Ala.2001), the supreme court held that Alabama's UM statute, as written, permits the recovery of punitive damages, and that only the legislature has the authority to change the statute to limit recovery to compensatory damages.
[4] While Farmers argues that our uninsured/underinsured-motorists statute is unambiguous, several of Farmers' arguments would appear more consistent with the position that the statute does contain ambiguity ambiguity that stems from its focus on "protection" and on the fact that it describes the types of injuries that give rise to coverage rather than the types of damages.